221 So.2d 53

**TRANSWAY, INC., et al.**

v.

**LOUISIANA PUBLIC SERVICE COMMISSION.**

No. 49515.

March 31, 1969.

---

Harold R. Ainsworth, Charles E. Richards, Jr., New Orleans, Grove Stafford, Stafford & Pitts, Alexandria, for intervenors-appellants.

Joseph H. Kavanaugh, Baton Rouge, for appellant.

Clint L. Pierson, Baton Rouge, Ragan D. Madden, Ruston, O'Connor & O'Connor, New Orleans, for appellees.

SANDERS, Justice.

This is a proceeding to transfer a certificate of public convenience and necessity, originating in the Louisiana Public Service Commission. England Transportation Company, Inc., holds Certificate No. 5087, authorizing it to transport certain commodities over irregular routes in Louisiana.[1] Transway, Inc., holds an irregular route certificate of the same type, embracing only a portion of the commodities covered by the England Certificate. By joint petition, England and Transway sought the approval of the Louisiana Public Service Commission to transfer the England Certificate to Transway. Opposition to the transfer was filed by Continental Southern Lines, Inc. and the Greyhound Corporation, passenger bus operators, and several rail and motor carriers. Their opposition is founded upon three grounds:

1. The purpose for which England's certificate was granted and the intent of the Commission in issuing it would be perverted by the transfer, and the operations of Transway would adversely affect other carriers.

2. Transway is not a fit and responsible person to operate the certificate.

3. England had not substantially operated all of its rights under the certificate within the preceding six months, as required for transfer by LSA–R.S. 45:166(B).

After a hearing, the Commission denied the application for transfer in a written opinion, holding Transway was not a fit person and Transway's increased service would harm existing carriers to the prejudice of the public interest. Commissioner Knight dissented from the decision.

---

1. The commodities covered are: lumber; building material and supplies; groceries and feed; rice and cotton; oil field materials and supplies, including cement and drilling mud; household furniture; sacks, bottles and cans; iron and steel articles; sheet iron and sheet steel ware and products; paper products; lubricating oils and service station greases; drugs; canned goods; compound and oil; cereals; candy; roasted coffee; cakes and crackers; soaps and toilet articles; paper goods and paper bags; tobacco and cigarettes; matches; and tea.

As authorized by Article VI, Section 5, of the Louisiana Constitution, England and Transway appealed from the order by filing suit in the Nineteenth Judicial District Court for East Baton Rouge Parish. The parties then introduced additional evidence, and in accordance with established procedures, the district court remanded the case to the Commission for further review. Affirming its previous holdings of unfitness and prejudice to the competing carriers, the Commission again denied the transfer. In addition, however, it held LSA–R.S. 45:166 banned the transfer, because of the absence of substantial operation under the certificate.

Subsequently, the district court sustained the Commission's order. After granting a new trial and assigning written reasons, the district court reversed the Commission and ordered the transfer.

The Louisiana Public Service Commission and the interested carriers appealed. The Commission, however, made no appearance in this Court.

■ The Louisiana Public Service Commission is charged with the responsibility of regulating common carriers of persons and property in the public interest. See LSA–R.S. 45:161. Since it operates in a technical field under a delegation of legislative power, its orders are accorded great weight and will be disturbed only when they are unreasonable, arbitrary, or capricious. Saia Motor Freight Line v. Louisiana Pub. Serv. Com'n, 248 La. 1, 176 So.2d 408; Railway Express Agency v. Louisiana Pub. Serv. Com'n, 243 La. 518, 145 So.2d 18; Rubion Transfer & S. Co. v. Louisiana Pub. Serv. Com'n, 240 La. 440, 123 So.2d 880.

LSA–R.S. 45:166(B) prohibits the transfer of a certificate when the holder has not "substantially operated all rights under said certificate" during the six-month period prior to the transfer, unless the failure to operate was due to causes beyond the holder's control.

■ The obvious purpose of the statute is to suppress the traffic in dormant or abandoned certificates.

■ A detailed study of England's operations was made for a four-month test period. As evidenced by its freight bills, England handled 1337 shipments during this period, a total of 2,774,074 pounds of freight. The only certificate commodities not shown on the freight bills were cakes, crackers, matches, and tea. The tabulation lists two hundred shipments of groceries, however, which the Commission concedes may have included these items. We agree with the district court that England substantially operated its rights under its certificate of public convenience and necessity.

■ Assuming, however, the Commission correctly held England's operations insubstantial, it does not follow that the transfer is proscribed. During the critical period, severe financial distress and a strike threat impeded England's operations. Under the circumstances shown by the record, we are of the opinion that any deficiency in operations was due to causes beyond the carrier's control. LSA–R.S. 45:166(B); S. A. Harris Trans. & S., Inc. v. Louisiana Pub. Serv. Com'n, 240 La. 1059, 127 So.2d 148.

As evidence that Transway fails to qualify as a fit and responsible person, the opponents point to five instances in which the Commission adjudged Transway guilty of violations of its certificate, that is, instances in which it carried an unauthorized commodity. Although Transway had operated under its certificate for nineteen years, the violations occurred during a period of six years preceding the application for transfer.

■ The question presented is whether these five violations are sufficient to disqualify Transway as a fit and responsible person. We think not. The freight charges on the articles carried, as noted by the district court, were small. Three of the cases involved close questions of certificate interpretation.

Edward L. Newsham, former head of the Motor Transportation Division of the Commission for twenty-one years, appeared as a witness for petitioners to describe the basis for the complaints against Transway. He testified that Transway was a "reliable carrier" and that its "overall record was real good."

We conclude, as did the district court, that Transway is a fit and responsible carrier.

■ The remaining question is whether an overriding public interest against destructive competition supports a denial of the transfer.

Opponents first contend that Transway proposes an operation under the certificate quite different from that contemplated by the Commission when it was first issued to England. Secondly, they contend that the transfer would have an adverse effect upon existing carriers to the prejudice of the public interest. Their position, summarized in the testimony of Frank Kegley, Traffic Director of Continental Southern Lines, is that England conducts only limited operations because of its poor financial condition. As a financially strong carrier, Transway would compete "more vigorously" thus depriving the competing carriers of needed revenue.

In sustaining the opponents' contentions, the Commission stated:

"Normally, of course, in the transfer of a certificate the question of public convenience and necessity does not arise, since the existence of the certificate presupposes a previous finding of public convenience and necessity; but where there is evidence, as there is here, that the certificate after the transfer would be put to a different use than that to which it was presently being put, it behooves the Commission to be alert to the possible effect of the transfer upon the existing transportation picture. Furthermore, the demands of the public convenience and necessity change with the passage of time, and we would be derelict in our duty if we paid no attention whatever to the circumstances and conditions that exist at the time of the transfer, as compared to those that existed at the time of the certificate's issuance—particularly where the certificate is, as in this case, twenty years old and is itself the successor of even older certificates. We have consistently recognized our responsibility in this respect."

■ We are of the opinion the Commission erred in holding that the transferee's operations under the certificate would constitute a new and different service. The operations of the transferee, like those of the original holder, are limited

by the terms of the certificate to irregular routes and to the commodities specified. The only anticipated change is one of improvement in service, resulting from the financial stability of the transferee.

Such a change in the stability of the certificate owner and quality of service does not warrant a new inquiry into public convenience and necessity. The Commission adjudicated that issue when the certificate was granted. Nothing prohibits England from upgrading its service, if it could. The present proceeding seeks only to substitute one carrier for another. Although the Commission must determine whether the transfer violates the public interest, it erred when it injected public convenience and necessity into the present case. Arkansas Motor Freight Lines v. Howard, 224 Ark. 1011, 278 S. W.2d 118. See also University City Transfer Co. v. Florida Railroad Com'n, 124 Fla. 308, 168 So. 413; Morris v. Public Service Commission, 7 Utah 2d 167, 321 P.2d 644; Re Miller, 25 P.U.R.(N.S.) 437.

In Arkansas Motor Freight Lines v. Howard, supra, the Supreme Court of Arkansas stated:

"The protestant's witnesses were forthright in admitting that their anxiety results from the prospect of the Atlas certificate's being transferred to the two

appellees, independent operators with experience in the trucking field. Each of these witnesses expressed the same thought: that a more active utilization of the Atlas franchise will take some business from other established carriers, that this loss of traffic will result in a deterioration in the service heretofore rendered, and that the public will therefore suffer. Such considerations would be pertinent if the present issue were that of public convenience and necessity, but they are not a ground for denying the appellees an opportunity to fill the need that was found to exist when the Atlas certificate was granted—a need that Atlas itself might have alleviated had it been able to expand its facilities to the competitive extent that now causes the appellants to be disturbed."

In relying strongly on the spector of increased competition, the Commission designed a rule that will bar any carrier passing through a period of financial distress and curtailed operations from disposing of its certificate to a stable carrier. That a valuable certificate would be lost under these circumstances defies legal theory. We conclude, as did the district court, that the Commission abused its power and the transfer should be ordered.

For the reasons assigned, the judgment of the district court is affirmed.