256 So.2d 118

**MATLACK, INC. and Shipper Transports, Inc.**

v.

**LOUISIANA PUBLIC SERVICE COMMISSION.**

No. 51613.

Dec. 13, 1971.

Rehearing Denied Jan. 17, 1972.

Kantrow, Spaht, Weaver & Walter, Carlos G. Spaht, James M. Field, Baton Rouge, for plaintiffs-appellants.

Theo F. Cangelosi, John Schwab, Robert L. Cangelosi, Joseph H. Kavanaugh, Marshall B. Brinkley, Baton Rouge, for defendant-appellee.

McCALEB, Chief Justice.

Matlack, Inc., and its wholly owned subsidiary Shipper Transports, Inc., are appealing from a judgment affirming the ruling of the Louisiana Public Service Commission which ordered the cancellation of Certificate No. 5356 at the instance of complainants, Bulk Transport, Inc., and Asphalt Transport, Inc.

This certificate, which was granted to Shipper in August of 1956, authorized the transportation of cement in bulk by motor vehicle "Over irregular routes from, to and between all points within the state of Louisiana." In 1964 the commission approved a merger through which all of the capital stock of Shipper was acquired by a new (Hearin-Miller) transportation corporation, but it refused to authorize the transfer of Certificate No. 5386 to the new corporation.[1] When Matlack, subsequently and through another approved merger, acquired all of the capital stock of Shipper, it was also unsuccessful in securing the transfer of the certificate to it.[2] In both instances the transfers were opposed by Bulk and Asphalt, the complainants, although they offered no opposition to the acquisition of all of Shipper's capital stock by these new corporations, and made no effort to have the certificate cancelled under R.S. 45:166(C), as here.

It is conceded by appellants that after Certificate No. 5386 was acquired in 1957 it lay more or less dormant for a period of

1. The transfer was sought under R.S. 45:166(B), which provides: "No certificate or permit shall be sold, leased or transferred, nor shall such certificate or permit be used by any other than the person, firm or corporation to whom it was originally granted, unless and until it be shown by a clear preponderance and to the satisfaction of the commission that the owner thereof shall have for a period of six consecutive months, immediately prior to the lease transfer or use thereof by one other than the owner, substantially operated all rights under said certificate or permit; or that the failure to so operate was due to bankruptcy, receivership, or other legal proceedings, or to other causes beyond his or its control."

2. Counsel representing the appellants explained during oral argument that because the corporations felt they had not been aggrieved since Shipper still owned the certificate, they did not seek to have these rulings reviewed in the courts.

years, the reason therefor being that, although Shipper was ready, willing, and able to haul cement, it had been unable to obtain any traffic despite efforts exerted in this respect. During the latter part of 1965 and early in 1966, however, due largely to labor difficulties involving Bulk Transport, Inc., Shipper did for a short period actively conduct operations under the certificate.

The ruling refusing transfer of the certificate to Matlack was handed down April 5, 1967, and, from that time until September of 1969 the certificate again lay dormant because of inability to secure traffic, despite an active campaign for business which was commenced in 1968.

Shortly after Shipper became active in the field in September of 1969, its vice-president, on October 31, 1969, wrote the commission for advice as to "whether it is proper for Shipper Transports, Inc. to continue to engage in business transporting Cement in intrastate commerce in Louisiana," as they had been receiving inquiries from various shippers with respect to this. The commission's secretary, on November 4, 1969, informed Shipper by letter that "there is not at the present time (and has not been) any order or ruling of the Com-

mission prohibiting such operations." Consequently, Shipper continued its operations until October 28, 1970, when the commis-sion's final ruling,[3] contained in its order No. 10474(A), cancelled Certificate No. 5386, effective on that date.[4]

Meanwhile, Bulk and Asphalt had filed a complaint with the commission in which they alleged Matlack and Shipper were engaged in the illegal transportation of cement in intrastate commerce in Louisiana. The basis for this complaint was that Matlack had no certificate authorizing such transportation, that the commission's order declining to transfer Shipper's operating rights under Certificate No. 5386 was (purportedly) "issued on the basis that said certificate had not been operated within six (6) months prior to the proposed transfer, as required by R.S. 45:166(B);" and that, accordingly, in view of the commission's finding there had been no operation for six months under R.S. 45:166(B), the certificate "must now be cancelled" under R.S. 45:166(C).

In sustaining this complaint and ordering the cancellation of Certificate No. 5386, albeit no written reasons were assigned for its decision, the commission evidently gave

3. The original order (No. 10474) was handed down July 20, 1970, but a rehearing was granted. This was affirmed following the rehearing in Order No. 10474 (A), handed down October 28, 1970.

4. One of the commissioners concurred only, being of the opinion the order should not

be made effective until after appellants had exhausted their review rights in the courts. An attempt to secure injunctive relief pending final judicial determination on the basis of irreparable injury was unsuccessful, but appellants did not seek a writ to review the district court's ruling denying this relief.

a strict and literal construction to the provisions of R.S. 45:166(C) and, likewise, the district judge, in sustaining the ruling without written reasons must have applied the same interpretation. Hence, the case presents for our consideration for the first time an interpretation, in the perspective of the facts, of R.S. 45:166(C), adopted by Act 131 of 1958, bearing in mind, however, that in interpreting R.S. 45:166(B) in S. A. Harris Trans. & S., Inc. v. Louisiana Public Service Commission, 240 La. 1059, 127 So.2d 148, we gave it a broad and liberal application.[5]

R.S. 45:166(B) provides: "No certificate or permit shall be sold, leased or transferred, nor shall such certificate or permit be used by any other than the person, firm or corporation to whom it was originally granted, unless and until it be shown by a clear preponderance and to the satisfaction of the commission that the owner thereof shall have for a period of six consecutive months, immediately prior to the lease transfer or use thereof by one other than the owner, substantially operated all rights under said certificate or permit; or that the failure to so operate was due to bankruptcy, receivership, or other legal proceedings, *or to other causes beyond his or its control.*" (Emphasis ours.)

Subsection (C) provides: "Where the owner of a certificate as a common carrier of passengers or freight or of a permit as a contract carrier issued by the Louisiana public service commission has not for a period of six consecutive calendar months operated thereunder to a reasonable extent all rights under said certificate or permit *shall cease and terminate and same shall be cancelled* either upon motion of commission or of any interested person after notice to the owner of said certificate or permit and hearing thereon by the commission." (Emphasis ours.)

Counsel for appellants contend (1) the commission acted arbitrarily in cancelling Certificate No. 5386 inasmuch as Shipper was operating substantially and/or to a reasonable extent at the time appellants were cited under the complaint and also at the time of the hearing; and that (2) when Subsections (B) and (C) are considered together, as they must, being laws in pari materia, in determining what constitutes operation "to a reasonable extent" under the latter, the commission erred in cancelling the certificate in view of the evidence establishing Shipper was at all times ready, willing, and able to haul cement over irregular intrastate routes, and its failure to

---

5. As against the contention the exceptions in R.S. 45:166(B) were limited to the examples given in that section, this court held the "control" clause "broadly extends the exemption from the statutory prohibition to any other cause, *no matter from what source,* provided it is beyond the control of the operator." (Emphasis ours.)

secure traffic in this field was due to conditions beyond its control.

The Bulk and Asphalt corporations, on the other hand, take the position that the mere fact Shipper was operating on the date of citation and/or hearing does not place the matter "without the ambit of R.S. 45:166C" under the plain language of the statute and the evidence reflecting nonoperation year after year. Although there is no mention of this phase of the case in brief, during oral argument counsel for the complainants contended the certificate holder could only remove itself from the cancellation penalty of Subsection (C) if, at the time of citation and/or hearing, it had been actually conducting operations "to a reasonable extent" for a period of at least six months.

Counsel for complainants further assert that the lenient provisions excusing nonoperation for reasons beyond the certificate holder's control, available to facilitate the transfer, sale, or lease of certificates under Subsection (B), cannot be read into Subsection (C) to prevent cancellation for nonoperation during any prescribed six-month period. They declare that since the provisions of Subsection (C) are clear, unambiguous, and mandatory, resort may not be made to other sources to determine legislative intent, and once it is established there has been no operation to a reasonable extent for "six consecutive calendar months," the certificate under the very terms of the statute "shall cease and terminate" and the commission has no discretion but to cancel it.

In this connection counsel argue that even if (B) and (C) are considered together, the result would be the same, for the commission's refusal to authorize transfer of Certificate No. 5386 under (B) was predicated on its conclusion that Shipper's failure to operate over long periods of time due to asserted inability to secure traffic— because, as alleged by Matlack and Shipper, "of the uncompetitive conditions existing in the cement shipping industry in Louisiana" —was not a condition beyond the control of Shipper.

We do not agree that the provisions of Subsection (C) are clear and unambiguous. While this subsection may be regarded as explicit from a literal standpoint, it becomes indefinite as to legislative intent when read in connection with Subsection (B). The rule of construction under such conditions is well stated in American Jurisprudence as follows: "Ambiguity of statutes may arise otherwise than from fault of expression. An ambiguity justifying the interpretation of a statute, is not simply that arising from the meaning of particular words, but *includes such as may arise in respect to the general scope and meaning of a statute when all its provisions are examined.* The courts regard an ambiguity to exist where the legislature *has enacted two or more provisions or statutes which appear to*

*be inconsistent.* There is also authority for the rule that uncertainty as to the meaning of a statute may arise from the fact that *giving a literal interpretation to the words would lead to such unreasonable, unjust, impracticable, or absurd consequences as to compel a conviction that they could not have been intended by the legislature.*" Volume 50, Section 226, page 209, Verbo "Statutes." (Emphasis ours.)

In Gremillion v. Louisiana Public Service Commission, 186 La. 295, 172 So. 163, we observed: "In the construction of statutes, absurd results should be avoided, and when the literal construction would produce such a result, the letter of the law must give way to its spirit and the statute should be construed so as to produce a reasonable result." See, also, In re Hibernia Bank & Trust Co., 185 La. 448, 169 So. 464; State ex rel. Womack v. Jones, 201 La. 637, 10 So.2d 213; Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237, and the authorities therein cited.

█ It is obvious from a mere reading of the literal language of Subsection (C) that even though nonoperation for six months is due to conditions over which the holder had no control, the certificate has "ceased" and "terminated" and is subject to cancellation. On the other hand, if the nonoperation is due to conditions over which the holder had no control, under Subsection (B) the same certificate could be transferred, sold, or leased. In other words after six months the certificate is "dead" and cancelable under (C) even though the failure to operate is not due to the holder's fault, whereas under (B) the same certificate is alive and can be transferred, sold, or leased.

Such an unjust and absurd result could never have been intended by the legislature. Read together, the standards for both are the same. Certainly the standard for determining whether there has been failure to operate "all rights under said certificate or permit" where the sale, lease, or transfer of a certificate is involved should not be more lenient than the standard for determining whether the holder has operated all rights under the certificate or permit where cancellation of this valuable right—a far harsher penalty—is concerned.

We hold, therefore, that the provisions excusing nonoperation in Subsection (B) are equally applicable to nonoperation in Subsection (C). Such holding does no violence to the intent of the legislature in amending R.S. 45:166 by Act 131 of 1958, i. e., to correct the evils resulting from unrestrained and indiscriminate trafficking in public certificates and permits.

█ It is also our opinion that the same applies to the effective date of the six-month period. In subsection (B) the "period of six consecutive months" is "immediately prior to the lease transfer or use."

There is no provision in Subsection (C) covering the effective date for this six-month period. However, it patently could not have been the intention of the legislature to authorize cancellation of a certificate in active operation at the time the motion for its cancellation is filed, simply because it could be established that at some time in the past the holder had not operated thereunder "to a reasonable extent" for "six consecutive calendar months." We therefore conclude that the six-month period provided in Subsection (C) necessarily must be confined to the period "immediately prior to the" date of citation for cancellation.

As we have stated above, the commission assigned no reasons for refusing to authorize the transfer of Certificate No. 5386, first to Hearin-Miller and later to Matlack, and also in ordering its cancellation; neither did the trial court in upholding the cancellation. We do not know, therefore, whether these rulings were predicated on the conclusion that failure to secure business was not a matter beyond Shipper's control, or whether on the conclusion that the mere fact Shipper was ready, able, and willing to haul cement over irregular intrastate routes did not constitute operation "to a reasonable extent." However, the conclusion we have reached makes it unnecessary for us to pass on these issues at this time.

For the reasons assigned, the judgment of the district court affirming the ruling of the Louisiana Public Service Commission as contained in its Orders Nos. 10474 and 10474A is annulled and set aside, and Certificate No. 5386 is ordered restored to Shipper Transports, Inc.