564 So.2d 294 (1990)
HERMAN BROTHERS, INC. and Material Delivery Service, Inc.
v.
LOUISIANA PUBLIC SERVICE COMMISSION, et al.
No. 90-CA-0935.
Supreme Court of Louisiana.
June 28, 1990.
Rehearing Denied September 5, 1990.
Carlos Spaht, Baton Rouge, for Herman Bros. Inc. and Material Delivery Serv. Inc., plaintiff-appellant.
Louis Quinn, Baton Rouge, for Coleman American Moving Serv. Inc. Huggard Trucking Co. Inc., defendant-appellee.
Robert Rieger, Jr., Baton Rouge, for Louisiana Public Serv. Com'n, defendant-appellee.
WATSON, Justice.[*]
The issue in this appeal is whether the Louisiana Public Service Commission was arbitrary and capricious in approving the transfer of a certificate for common carriage *295 by motor vehicle when the certificate had been issued only fifteen days before the application for approval was filed.

FACTS
Coleman American Moving Services, Inc. holds common carrier certificate No. 5229-F authorizing it to carry special commodities over irregular routes throughout the state of Louisiana. The commodities included in Coleman's certificate are: "oilfield equipment; materials and supplies; Irish and Sweet potatoes; household goods; sugarcane; corn; lumber; potato crates; heavy building materials; rice; fresh and dehydrated vegetables; truck produce; fertilizers; feed; sacks; cotton; cottonseed and syrup."[1] Coleman has only been hauling household goods and equipment under its certificate. However, the Commission's policy is to regard transportation of any one commodity as substantial operation under a multi-commodity certificate.[2]
Acadia Movers of Baton Rouge, Inc., now Haggard Trucking Company, Inc., holds common carrier certificate No. 6019, issued December 21, 1987. Acadia's certificate is limited and only authorizes transportation of household goods over irregular routes state wide. Prior to receiving the state-wide certificate for household goods, Acadia/Haggard had been moving household goods in the Baton Rouge area.
On January 5, 1988, Coleman and Acadia filed a joint application with the Public Service Commission asking approval for the exchange of their certificates. On April 5, 1988, the parties' exchange agreement was amended to provide for the payment of $20,000 in additional consideration by Acadia to Coleman.
In response to threatened opposition from movers of household goods, the parties agreed that if the exchange were approved by the Commission, Coleman's certificate would be amended to delete household goods. Also, Acadia/Haggard agreed it would not apply to the Louisiana Public Service Commission for household goods' operating authority during a period of ten years. Haggard is primarily interested in hauling cement under Coleman's certificate.
Herman Brothers, Inc. and Material Delivery Service, Inc., common carriers for cement and other products, opposed the application on the ground that there was no substantial operation under the permits within the prior six months as required by LSA-R.S. 45:166 B.[3] Ronnie Haggard, who owns a majority of the Haggard stock, admitted that he had not had his state-wide operating authority for six months prior to the application for approval of the exchange.
*296 By Order No. T-17853 of the Louisiana Public Service Commission, issued June 14, 1988, the exchange was approved. The Commission stated that, in its opinion, all rights under the two certificates had been substantially operated for a period of six consecutive months prior to filing of the application for approval of the exchange. Chairman Don Owen dissented from the Order. Rehearing was denied by an order issued July 22, 1988.
The protesting carriers, Herman Brothers, Inc. and Material Delivery Service, Inc., filed a petition for appeal with the district court pointing out that Acadia's certificate was granted on December 21, 1987, the application for approval of the exchange was filed on January 5, 1988 and nothing had been hauled under Acadia's certificate at the time the application was filed.
The district court affirmed the Order of the Commission and dismissed the appeal. The protesting carriers have appealed to this court.
The exchange agreement was conditioned upon final approval by the Commission. It is contended that there had been six months of operation when a rehearing was denied by the Commission on July 22, 1988. However, since six months' operation is a question for proof before the Commission, the six months' period must be complete when the application for approval is filed.[4] The Commission recognized this in its Order which found substantial operation for six consecutive months prior to filing of the application.
There is no question that Ronnie Haggard, the owner of the Acadia/Haggard certificate, did not substantially operate all rights under that certificate for six consecutive months immediately prior to the application for exchange. Six months' operation would have been impossible, because Haggard had not held the certificate for six months.
It has been held that the purpose of the six months' requirement is suppression of traffic in dormant or abandoned certificates. Transway, Inc. v. Louisiana Public Service Commission, 253 La. 933, 221 So.2d 53 (1969).[5] However, even if the purpose is to prevent transfer of dormant certificates, the statutory language does not except new certificates from the requirement of six months' operation. Since an applicant for a common carrier's certificate must show "public convenience and necessity," allowing a successful applicant to immediately transfer that certificate would be anomalous.[6] Because the language of the statute is unambiguous and does not lead to absurd consequences, it must be applied as written. LSA-C.C. *297 arts. 11 and 12.[7]
It is contended that the legislative provision conflicts with the constitutional grant of power to the Commission in the 1974 Constitution. Article 4, § 21, La. Const. of 1974.[8] Two cases, La. Consumers' League, Inc. v. Louisiana Public Service Commission, 351 So.2d 128 (La.1977) and Cajun Electric Power v. Louisiana Public Service Commission, 544 So.2d 362 (La.1989), are cited for the proposition that the Commission's plenary authority over motor carriers cannot be restricted by legislative enactments.
La. Consumers' League, Inc., a plurality opinion, held that the Administrative Procedure Act does not apply to the Public Service Commission. However, this legislative prohibition is substantive. It is not a procedural rule.
Cajun Electric Power held that the Public Service Commission has jurisdiction over electric cooperatives which are public utilities and thereby subject to the Commission's authority. Cajun Electric Power is not decisive here. The legislature's lack of power to alter the Commission's constitutional jurisdiction does not prevent the legislature from enacting substantive provisions affecting motor carriers. The very definition of common carrier by motor vehicle is contained in a statute. See LSA-R.S. 45:162(5).[9] The Commission has recognized and acquiesced in the legislative enactments affecting motor carriers. It is conceded in brief that the Commission "... in its exercise of regulatory authority over motor Common Carriers is bound by legislative enactments directing the Commission in the manner in which it will exercise this authority...."[10] In the instant case, the Commission's Order gives pro forma recognition to the statute in the wording of its Order.
Since a Commission's Order is entitled to great weight, it will not be reversed unless it is based on an error of law or lacks a reasonable evidentiary basis. Southern Message Service v. Louisiana Public Service Commission, 554 So.2d 47 (La.1989); Big Diamond Truck Service, Inc. v. Louisiana Public Service Commission, 553 So.2d 431 (La.1989); Southern Message Service v. Louisiana Public Service Commission, 520 So.2d 734 (La.1988); Miller Transporters, Inc. v. Louisiana Public Service Commission, 518 So.2d 1018 (La.1988). A Commission's Order should be upheld unless it is arbitrary and capricious or a clear abuse of power. Central Louisiana Electric Co. v. Louisiana Public Service Commission, 508 So.2d 1361 (La.1987); Central Louisiana Electric Co. v. Louisiana Public Service Commission, 437 So.2d 278 (La.1983); and Florane v. Louisiana Public Service Commission, 433 So.2d 120 (La.1983).
This Order cannot be upheld. There is a complete lack of evidence establishing six months' consecutive prior operation before filing of the application for approval. Since the Commission's Order lacks any *298 evidentiary basis, it is arbitrary and capricious and must be reversed.

DECREE
For the foregoing reasons,
THE JUDGMENT OF THE DISTRICT COURT IS REVERSED AND LOUISIANA PUBLIC SERVICE COMMISSION ORDER NO. T-17853 IS REVERSED AND VACATED. ALL COSTS ARE ASSESSED TO COLEMAN AMERICAN MOVING SERVICES, INC. AND HAGGARD TRUCKING, INC. (FORMERLY ACADIA MOVERS OF BATON ROUGE, INC.).
REVERSED AND RENDERED.
COLE, J., concurs additionally to note the absurdity of the Commission's plenary authority argument, the continued pursuit of which exhibits constitutional illusions of being a fourth branch of government.
LEMMON, J., dissents and assigns reasons.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I respectfully concur.
Although the result reached by the majority is correct, the arbitrary and capricious standard of review is inappropriate because the Commission's order was based on an error of law. La.R.S. 45:166 prohibits the transfer of a common carrier certificate of authority in the absense of a showing that the owner thereof had substantially operated all rights thereunder for a period of six consecutive months. The transferee failed to make such a showing because the transferor had, in fact, held the certificate for less than six months prior to the commencement of this proceeding.
I find unnecessary and disagree with the majority's treatment of the academic constitutional issue discussed in its opinion. The defendants-appellees have failed to point out any rule, precept or principle of law with which the statute might be in conflict.
LEMMON, Justice, dissenting.
The purpose of La.Rev.Stat. 45:166's requirement of six consecutive months of substantial operations immediately prior to the transfer is to establish a presumption of abandonment and to prevent trading in dormant or abandoned certificates. Transway, Inc. v. Louisiana Public Service Commission, 253 La. 933, 221 So.2d 53 (1969). Enforcement of the requirement against new certificates is not specifically excepted by the statute, but serves no useful purpose.
Here, the six-month period has now elapsed, and the only effect of this court's decision is to require the parties to go uselessly through the same procedure before the Commission to obtain the same result we now reverse. I dissent from that reversal.
NOTES
[*] Judge Melvin A. Shortess of the Court of Appeal, First Circuit, participated in this decision as Associate Justice Pro Tempore.
[1] Certificate of Public Convenience and Necessity as Common Carrier of Special Commodities Over Irregular Routes, Exhibit A to Joint Application of Coleman American Moving Services, Inc. and Acadia Movers of Baton Rouge, Inc.
[2] Stipulation, filed in evidence as Exhibit Joint 1, November 3, 1989.
[3] LSA-R.S. 45:166 provides:

A. Any certificate or permit may, in the discretion of the commission, be amended, suspended or revoked in whole or in part after notice and hearing for failure to comply with any provision of R.S. 45:161 through 45:172, or with any lawful order, rule or regulation of the commission promulgated pursuant thereto, or with any term, condition or limitation of the certificate or permit.
B. No certificate or permit shall be sold, leased or transferred, nor shall such certificate or permit be used by any other than the person, firm or corporation to whom it was originally granted, unless and until it be shown by a clear preponderance and to the satisfaction of the commission that the owner thereof shall have for a period of six consecutive months, immediately prior to the lease transfer or use thereof by one other than the owner, substantially operated all rights under said certificate or permit; or that the failure to so operate was due to bankruptcy, receivership, or other legal proceedings, or to other causes beyond his or its control.
C. Where the owner of a certificate as a common carrier of passengers or freight or of a permit as a contract carrier issued by the Louisiana public service commission has not for a period of six consecutive calendar months operated thereunder to a reasonable extent all rights under said certificate or permit shall cease and terminate and same shall be cancelled either upon motion of commission or of any interested person after notice to the owner of said certificate or permit and hearing thereon by the commission.
[4] Compare B & M Trucking, Inc. v. Louisiana Public Service Commission, 353 So.2d 1323 (La. 1977) where the applicant was not incorporated until after its application for authority was filed with the Commission but did obtain corporate status three months before the hearing was held and seven months before the Commission rendered its order. It was held that the applicant's "after-acquired status" was not fatal to the application.
[5] There is a statutory exception when failure to operate is beyond the carrier's control. This allows an insolvent or distressed carrier to dispose of its certificate. Matlack, Inc. v. Louisiana Public Service Commission, 260 La. 359, 256 So.2d 118 (1971); Transway, Inc.; S.A. Harris Trans. & S., Inc. v. Louisiana Public Service Commission, 240 La. 1059, 127 So.2d 148 (1961).
[6] LSA-R.S. 45:164 provides:

No motor carrier shall operate as a common carrier without first having obtained from the commission a certificate of public convenience and necessity, which shall be issued only after a written application made and filed, a public hearing, due notice given to applicant and all competing common carriers, and a finding by the commission that public convenience and necessity require the issuance of a certificate. No new or additional certificate shall be granted over a route where there is an existing certificate, unless it be clearly shown that the public convenience and necessity would be materially promoted thereby.
No motor carrier shall operate as a contract carrier without having had a public hearing and obtained from the commission a permit to do so, which permit shall not be issued unless in the public interest and until the applicant shall have complied with the requirements of R.S. 45:161 through R.S. 45:172.
[7] LSA-C.C. art. 11 provides:

The words of a law must be given their generally prevailing meaning.
Words of art and technical terms must be given their technical meaning when the law involves a technical matter.
LSA-C.C. art. 12 provides:
When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
[8] Art. 4, § 21(B), La. Const. of 1974 provides:

(B) Powers and Duties. The Commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.
[9] LSA-R.S. 45:162(5) provides in pertinent part:

(5) "Common carrier by motor vehicle" means any person, the essential nature of whose business comprises engaging in, soliciting or accepting persons or property for transportation for hire, charge, or compensation as an employment or holding himself out as so available to the public generally and indiscriminately for such business, whether or not the business is conducted over a regular route, between fixed termini, within a defined area, or upon a regular or irregular schedule.
* * * * * *
[10] Original brief of Coleman American Moving Services, Inc., Haggard Trucking, Inc. and Louisiana Public Service Commission, p. 3.