589 So.2d 70 (1991)
LIBERTY MUTUAL INSURANCE COMPANY, Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation
v.
LOUISIANA INSURANCE RATING COMMISSION.
No. 91 CA 0149.
Court of Appeal of Louisiana, First Circuit.
October 18, 1991.
Writ Denied January 6, 1992.
Eugene R. Groves, Baton Rouge, for plaintiff-appellant Liberty Mut. Ins. Co., Liberty Mut. Fire Ins. Co. and Liberty Ins. Corp.
John B. Fontenot, Baton Rouge, for defendant-appellee Louisiana Ins. Rating Com'n.
Before WATKINS, CARTER, and FOIL, JJ.
*71 CARTER, Judge.
This is an appeal from a trial court judgment affirming a decision by the Louisiana Insurance Rating Commission on a request for a rate increase in worker's compensation insurance rates.

BACKGROUND
Worker's compensation insurance is made available to Louisiana employers in the voluntary market and in the involuntary market. The voluntary market consists of worker's compensation insurance that insurance carriers choose to write. Each individual carrier applies for rate increases with regard to the policies of insurance it writes in the voluntary market. In addition, all licensed carriers participate in a residual insurance mechanism or involuntary market designed to provide insurance for those employers who are unable to obtain worker's compensation coverage on a voluntary basis. This involuntary market is referred to as the "Assigned Risk Plan." The National Council on Compensation Insurance (NCCI) administers this involuntary market, known as the "Louisiana Worker's Compensation Insurance Plan," (Plan) and applies for rate increases for the Plan.

FACTS
On or about January 23, 1989, Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, and Liberty Insurance Corporation (collectively Liberty Mutual) filed revised rates of worker's compensation insurance with the Louisiana Insurance Rating Commission (Commission), seeking a 65% increase in its worker's compensation rates. The rate request was considered by the Commission on February 15, 1989, after which the Commission approved a 35% increase in Liberty Mutual's rates. On March 16, 1989, Liberty Mutual, pursuant to LSA-R.S. 22:1418, filed a request for a hearing to the extent the Commission did not grant the full 65% increase in the rates as requested. After a full hearing, the Commission again denied Liberty Mutual's request for an additional 30% increase.
On July 14, 1989, Liberty Mutual filed a petition for judicial review of the Commission's findings with the 19th Judicial District Court. Thereafter, the trial court rendered judgment in favor of the Commission and against Liberty Mutual, affirming the Commission's denial of the additional 30% rate increase request.
From this adverse judgment, Liberty Mutual appeals, assigning the following errors:
1. The Commission erred in failing to give due consideration to the substantial expense of assessments paid to the Plan by Liberty Mutual.
2. The Commission erred in its finding that Liberty Mutual's participation in the Plan is not mandatory. Further, the Commission erred in its determination that there was any legal significance to the issue of whether participation in the Plan is voluntary or mandatory.
3. The Commission erred in making a decision that was without any evidentiary support in the record and was contrary to the uncontroverted insurance and actuarial expert testimony presented at the hearing.
4. The trial judge erred in affirming the Commission's decision. Further, he erred in the standard used to review that decision.
5. The trial judge erred in failing to allow the introduction of additional evidence limited to an issue raised for the first time in the Commission's ruling.

STANDARD OF REVIEW
Generally, the decisions of the Commission are entitled to great weight and should be upheld unless they are manifestly erroneous or arbitrary and capricious. LSA-R.S. 49:964 G(5) and (6); Herman Brothers, Inc. v. Louisiana Public Service Commission, 564 So.2d 294, 297 (La.1990). The manifest error doctrine relates only to factual findings of the trier of fact and has no application to conclusions of law or public policy. Insurance Services Office v. Commissioner of Insurance, 381 So.2d 515, 516 (La.App. 1st Cir.), writ *72 denied, 382 So.2d 1391 (La.1979). However, the Commissioner's order may be reversed where: (1) the decision lacks a reasonable evidentiary basis; or (2) the decision is based on an error of law. Herman Brothers, Inc. v. Louisiana Public Service Commission, 564 So.2d at 297.

ACTION BY THE INSURANCE RATING COMMISSION
Liberty Mutual contends that, in determining the amount of the rate increase to which Liberty Mutual was entitled, the Commission erred in failing to take into consideration all losses the company sustained as a result of its participation in the worker's compensation market. Liberty Mutual contends that the Commission should have considered the losses Liberty Mutual sustained in the involuntary market as voluntary market expenses. Liberty Mutual contends that the expert testimony presented at the hearing before the Commission supports its contention that the involuntary market losses are legitimate expenses, which should have been considered by the Commission in setting the voluntary market rates.
Generally, the Commission is authorized to regulate rates to "promote the public welfare ... to the end that they shall not be excessive, inadequate, or unfairly discriminatory." LSA-R.S. 22:1402. Further, all rates are to be made in accordance with the provisions of LSA-R.S. 22:1404, which provides, in pertinent part, as follows:
(1) Due consideration shall be given to past and prospective loss experience within and outside this state, to catastrophe hazards, if any, to a reasonable margin for underwriting profit and contingencies, to dividends, savings or unabsorbed premium deposits allowed or returned by insurers to their policyholders, members or subscribers, to past and prospective expenses both countrywide and those specially applicable to this state, and to all other relevant factors within and outside this state.
(2) Rates shall not be excessive, inadequate or unfairly discriminatory.
(3) Rates for casualty insurance to which this Part applies shall also be subject to the following provisions:
(a) The systems of expense provisions included in the rates for use by any insurer or group of insurers may differ from those of other insurers or groups of insurers to reflect the requirements of the operating methods of any such insurer or group with respect to any kind of insurance, or with respect to any subdivision or combination thereof for which subdivision or combination separate expense provisions are applicable.
(b) Risks may be grouped by classifications for the establishment of rates and minimum premiums. Rates may be established on the basis of any classifications submitted by any insurer or group of insurers, provided such classifications are found to be reasonable. Classification rates may be modified to produce rates for individual risks in accordance with rating plans which establish standards for measuring variations in hazards or expense provisions, or both. Such standards may measure any differences among risks that can be demonstrated to have a probable effect upon losses or expenses.
At the hearing, Liberty Mutual presented the testimony of numerous witnesses, including Brian Mibus, Southwest Division Commercial Underwriting Manager for Liberty Mutual; Nancy Treitel, actuary for Liberty Mutual; and Richard Zatorski, director of Casualty Actuarial and Risk Management Services for Coopers & Lybrand. Each witness testified as to the losses Liberty Mutual has sustained, attributing the involuntary market expense as part of the reason for the losses. Each witness also testified that the involuntary market assessments are legitimate expenses or costs of doing business in the voluntary market. However, Mibus acknowledged that, if the expenses from the residual market were omitted from the calculations, the 35% increase in voluntary market rates previously granted by the Commission would have made the company profitable. Zatorski also testified that the 35% increase was reasonable for the voluntary market alone. *73 Moreover, Zatorski acknowledged that, if the 35% increase would put Liberty Mutual on a break-even basis, he, as an actuary, would not grant the company the additional 30% increase.
In granting only a 35% increase in rates and refusing to increase rates by an additional 30%, the Commission determined that each market, the voluntary and involuntary market, should stand on its own and that the voluntary market should not be asked to subsidize the involuntary market. According to the Commission, a policy such as that urged by Liberty Mutual would result in the insurance rates in the voluntary market exceeding those of the involuntary market. As a result, the Commission determined that only Liberty Mutual's losses in the voluntary market would be considered, and it refused to permit Liberty Mutual to recoup involuntary market losses through a voluntary market rate increase. The Commission also determined that an application for an increase in Liberty Mutual's involuntary rates should be made by NCCI in a separate application.
The law specifically permits the Commission to classify risks for the purposes of setting rates. We cannot say that the Commission was arbitrary or capricious in classifying the risks associated with the voluntary market separately from those associated with the involuntary market and in refusing to include, as an expense in the voluntary market, losses from the involuntary market. Liberty Mutual's remedy appears to lie in the NCCI's applying for an increase in involuntary market rates sufficient to make its participation in the involuntary market (Assigned Risk Plan) profitable as opposed to subsidizing its losses in the involuntary market by raising rates of those employers insured in the voluntary market.
Additionally, the Commission made a factual determination that the 35% increase in the voluntary rates would result in the profitable operation of Liberty Mutual in the voluntary market. Based upon the record before us, we cannot say that this was error.

CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. Liberty Mutual is cast for all costs.
AFFIRMED.