It KIMBALL, Justice. *
This appeal raises the issue of whether the Louisiana Public Service Commission (Commission) erred in granting the transfer of Waste Management of Louisiana, LLC’s (WML) common carrier certificate to Custom Ecology, Inc. (CEI) in exchange for CEI’s contract carrier permit plus $50,000.00. On appeal to the Nineteenth Judicial District Court, pursuant to La. R.S. 45:1192, the Commission’s order was affirmed. Protestants appeal directly to this court pursuant to art. IV, sec. 21 of the Louisiana Constitution of 1974. After considering the evidence presented in this case, we conclude that the Commission’s decision that WML showed by a clear preponderance that it substantially operated all rights under its certificate for a period of six consecutive months immediately prior to the transfer was erroneous as a matter of law. Therefore, the trial court’s judgment is reversed.
FACTS
The Commission issued Common Carrier Certificate No. 5653-G (common carrier certificate) to WML on February 18, 1997, which authorizes the following:
Transportation of hazardous and nonhazardous waste, except oilfield waste, statewide. Restricted against the transportation of all commodities to or from oilfield drilling sites, oilfield production facilities and oilfield service companies, including but not limited to salt water, brine water, liquid mud, oil Dwell completion fluids and oilfield waste.
The Commission issued Contract Carrier Permit No. 1099-G (contract carrier permit) to CEI on November 1, 1996, which authorizes the following:
A permit to operate in Louisiana intrastate commerce as a contract carrier by motor, serving not more than five parties, to operate as follows: Over irregular routes; from, to and between all points within the state of Louisiana.
Hence, a common carrier certificate allows the transportation company to haul for anyone in the general public. Such certificate specifies the types of regulated waste allowed to be carried, the type of equipment that may be used and the geographic areas in which the company may operate. The common carrier certificate does not limit the number of customers with which its holder may contract. A contract carrier permit also specifies the type of waste allowed to be carried, the *750 type of equipment that may be used and the geographic areas in which the company may operate. However, a contract carrier permit only authorizes a transportation company to transport for up to five customers. Further, under a contract carrier permit, the company must keep its contracts to transport on file with the Commission. Thus, a common carrier certificate allows a company to transport for an unlimited number of customers; a contract carrier permit restricts the number of customers to five or less.
On September 4, 1997, WML entered into a contract with CEI whereby WML agreed to exchange its common carrier certificate for CEI’s contract carrier permit plus $50,000.00. The two companies filed an application with the Commission on September 8, 1997 to approve the transfer. After the application was published in the Commission’s bulletin as required by law, the Commission received statewide opposition from numerous common carrier certificate holders in the state. Protestants in this matter are two of the common carrier certificate holders that objected to the transfer.
In order to transfer a common carrier certificate or contract carrier permit, applicants must meet the requirements of La. R.S. 45:166(B), which provides:
B. No certificate or permit shall be sold, leased or transferred, nor shall such certificate or permit be used by any other than the person; firm or corporation to whom it was originally granted, unless and until it be shown by a clear preponderance and to the satisfaction of the commission that the owner thereof shall have for a period of six consecutive months, immediately prior to the lease transfer or use thereof by one other than the owner, substantially operated all rights under said certificate or permit; or that the failure to so operate was due to bankruptcy, receivership, or other legal proceedings, or to other causes beyond his |sor its control.
Accordingly, a hearing on the matter was held on November 20, 1997, before an administrative law judge (ALJ) and a final recommendation, that the transfer be granted by the Commission, was issued on December 16, 1997. At a public hearing held on December 17, 1997, the commission, over Protestants’ objections, found that both WML and CEI met the substantial operation requirement of La. R.S. 45:166(B) and granted the transfer with Order No. T-22757. In reaching its decision, the Commission noted that its General Order of January 9, 1989 provides that when a waste hauler transports waste to a waste facility owned or operated exclusively under contract by the transporter, or its corporate affiliate, such hauls are exempt from regulation by the Commission. Thus, as a result of this General Order of January 9, 1989, the daily transportation of large volumes of waste by WML that it disposes of at its own facilities are considered exempt hauls and do not qualify as operations under its common carrier certificate, which provides for regulated hauls only. The Commission noted that the facts in this case were unique, given that WML owns four of the nine landfills in Louisiana; thus, even though it engages in daily transports of waste, because these are exempt hauls, it technically does not meet the substantial operations requirements of La. R.S. 45:166(B) to transfer its certificate. However, the Commission, apparently relying upon Matlack v. Louisiana Pub. Serv. Comm’n, 260 La. 359, 256 So.2d 118 (1971), found that because WML was ready, willing and able to provide transportation of waste to disposal facilities owned by third parties, despite the fact that its efforts had been unsuccessful, those efforts were sufficient to satisfy the requirements of La. R.S. 45:166(B). The Commission noted that the decision was a close one, but that WML met the requirements, because of its unique circumstances and willingness to haul for third parties, to allow the transfer.
As to CEI, the main objection by protestants was the fact that, in a previous mat *751 ter before the commission, it had been cited for illegally hauling waste. Protestants contend CEI should not be allowed to use these “illegal” hauls as evidence that it has engaged in substantial operation under its contract carrier permit to meet the requirements of La. R.S. 45:166(B). The Commission took the position that this was the first and only violation by CEI and that fact, in and of itself, did not require it to deem CEI unfit. CEI contends that even if the hauls it was cited 14for were disregarded, it still provided enough evidence to prove substantial operations under its contract carrier permit.
After their application for rehearing was denied (Order No. T-22757A), protestants appealed to the district court for the Nineteenth Judicial District, Parish of East Baton Rouge alleging: (1) neither WML nor CEI met their burdens of proving substantial operation under their common carrier certificate or contract carrier permit, respectively, as per the requirements of La. R.S. 45:166(B); (2) CEI should not have been allowed to use “illegal” hauls as evidence that it substantially operated all its rights under its contract carrier, permit; and (3) the Commission’s decision was arbitrary and capricious as the findings are clearly contradicted by the evidence. The district court affirmed the findings of the Commission, concluding its decision was not arbitrary and capricious. However, the district court did note that it “has some question as to the sufficiency of the proof presented,” but that the ruling of the commission based upon the recommendation of the ALJ was supported by the evidence given the standard of review and the holding of Matlack, 260 La. 359, 256 So.2d 118. Thus, the district court refused to substitute its view where the ruling “is not clearly erroneous or unsupported by the record.”
Pursuant to La. Const, art. IV, sec. 21, protestants appeal the trial court’s decision directly to this court.
LAW
The general rule applicable in cases involving the Public Service Commission is that an order of the Commission “should not be overturned unless it is shown to be arbitrary, capricious, a clear abuse of authority, or not reasonably based upon the factual evidence presented.” Alma Plantation v. Louisiana Pub. Serv. Comm’n, 96-1423 p. 5 (La.1/14/97), 685 So.2d 107, 109, (citing Washington St. Tammany Elec. Coop., Inc. v. Louisiana Pub. Serv. Comm’n, 95-1932 (La.4/8/96), 671 So.2d 908, 912; Radiofone, Inc. v. Louisiana Pub. Serv. Comm’n, 573 So.2d 460, 461 (La.1991)). An order by the Commission is arbitrary and capricious “only when the record does not and could not reasonably support its finding.” Ken-Go Servs. v. Louisiana Pub. Serv. Comm’n, 483 So.2d 141, 142 (La.1986) (citing South Arkansas Vacuum Serv. of Louisiana, Inc. v. Louisiana Pub. Serv. Comm’n, 457 So.2d 655 (La.1984); M & G Fleet Serv., Inc. v. Louisiana Pub. Serv. Comm’n, 443 So.2d 579 (La.1983)). Further, the Commission is ^“entitled to deference in its interpretation of its own rules and regulations, though not in its interpretation of statutes and judicial decisions.” Alma Plantation, 96-1423 p. 5, 685 So.2d at 110 (citing Washington St. Tammany Elec. Coop., Inc., supra, at 912; Dixie Elec. Membership Corp. v. Louisiana Pub. Serv. Comm’n, 441 So.2d 1208, 1211 (La.1983)). Thus, because “a Commission’s order is entitled to great weight, it will not be reversed unless it is based on an error of law or lacks a reasonable evidentiary basis.” Herman Bros., Inc. v. Louisiana Pub. Serv. Comm’n, 564 So.2d 294, 297 (La.1990) (citing Southern Message Serv. v. Louisiana Pub. Serv. Comm’n, 554 So.2d 47 (La.1989); Big Diamond Truck Serv., Inc. v. Louisiana Pub. Serv. Comm’n, 553 So.2d 431 (La.1989)). Conversely, then, “it is the court’s duty to reverse the Commission’s finding if it is based on prejudicial error of law or on material facts that could not have been found reasonably from the evidence.” *752 Louisiana Tank Truck Carriers, Inc. v. Louisiana Pub. Serv. Comm’n, 549 So.2d 850 (La.1989).
In order to determine whether the Commission’s order is reasonably supported by the evidence, a comprehensive review of the testimony presented at the hearing before the ALJ is necessary. Ken-Go Servs., 488 So.2d at 148. At the November 20, 1997 hearing, WML’s first witness was Mack Mandell (Mandell), WML’s region president for Northwest Louisiana. Mr. Mandell testified that in December 1996, WML changed its name from Waste Management of Louisiana, Inc. to Waste Management of Louisiana, L.L.C., which change required it to cancel its old certificate and receive the one at issue in this case. Mr. Mandell further testified as to the nine transportation terminals WML has in the state and its asset base of approximately $180 million. Mr. Mandell testified that the equipment owned by WML to haul waste and its maintenance procedures are in excess of Department of Transportation requirements. Mr. Man-dell also testified as to WML’s insurance coverage of $5 million. Documentary evidence, including WML’s financial records, was entered into the record to support this testimony. During Mr. Mandell’s testimony, WML’s attorney sought to enter invoices dated August 5, 1997, September 30,1997 and October 29, 1997, evidencing services performed to third-party landfills to prove its burden of substantial operation under its common carrier certificate for six months prior to the application to transfer. Protestants objected to those invoices dated September 30, 1997 and October 29, 1997, arguing the application to transfer was filed on ^September 8, 1997 and the statute requires evidence prior to application. The ALJ admitted the invoice dated August 5, 1997 into evidence, but refused to admit those dated September 30, 1997 and October 29, 1997. Instead, these invoices were placed under separate cover for the Commission’s review.
On cross-examination, Mr. Mandell testified that WML prefers to haul to its own landfills for indemnification purposes and that it owns four of the nine landfills in the state. Mr. Mandell was questioned about the fact that the one invoice that was entered into evidence for WML originally listed CEI as the customer, but CEI’s name had been stricken and WML’s written in its place. Mr. Mandell testified he was not sure why CEI’s name had been stricken in that manner, but that perhaps “CEI was originally supposed to do this load and then they — we ended up doing it.” Further, despite the fact that WML employs approximately thirty people to bid on regulated hauls, for the last year and a half, total intrastate gross receipts for such hauls had been zero. WML’s tax returns for the previous year and a half showing zero gross receipts on regulated hauls, which covered the quarters ending June 19, 1997; March 31, 1997; December 31, 1996; September 30, 1996; and June 30, 1996, were then entered into the record. WML objected to the entry of any records prior to December 1996, arguing it was on that date that Waste Management of Louisiana, L.L.C. was formed.[2] Thus, the records prior to that date deal with a different permit. The ALJ sustained the objection, but admitted the records under separate cover for the Commission to consider.
WML’s second witness, sales manager Mike Anglin (Anglin), testified that the company currently had four bids outstanding for jobs going to third party landfills that had not yet been awarded. Protestants objected to this testimony arguing *753 the bids represented prospective business only and the requirement under the statute is substantial operation for six months prior to the filing of the application to transfer. Conversely, WML argued that Matlack controlled and, thus, if a carrier attempted to obtain business and could not, then the common carrier certificate l7could be transferred. The ALJ accepted this argument and allowed the testimony into the record over protestants’ objection. Mr. Anglin was not sure of the dates those bids were made but estimated they were made between April 1997 and October 1997. After further questioning, he testified that he was sure they were made within the six month time frame before the application was filed, or between February 1997 and August 1997. No documentary evidence of these bids was entered into the record.
WML’s third witness was Paul Kaspick, the Environmental Health and Safety Regional Manager for WML, who was to testify about the company’s safety ratings and maintenance programs. The parties, however, stipulated to this testimony for fitness purposes.
CEI then presented its evidence to attempt to prove it satisfied the six month substantial operation burden. CEI’s first and only witness was its Operation Manager Kevin Juneau (Juneau). , Mr. Juneau testified as to the business CEI engaged in, its equipment used to transport waste within Louisiana, its training programs and its insurance coverage. Documentary evidence was admitted to support this testimony. Mr. Juneau then testified as to the operations of CEI for the six months prior to the application, and CEI sought to introduce invoices for six separate companies, including WML, for which it had completed hauls. Protestants objected to all but the invoices for WML arguing that the only contract on file with the Commission was one between WML and CEI. Protestants argued that hauls CEI made for any other party constituted illegal operation because all contracts under a contract carrier permit are required to be on file with the Commission.[3] The ALJ, however, ruled that all the evidence would be admitted. Protestants contended CEI did not meet its burden because it must show it used “all its rights.” Because CEI’s contract carrier permit allows it to contract with up to five companies, CEI is not using “all” its rights under the contract carrier permit as evidence of illegal hauls should not be admitted to benefit CEI. Conversely, CEI argued that the amount of work performed for WML alone is substantial enough to meet its burden even if the other hauls are disregarded. CEI presented forty-three invoices evidencing transportation on a basis of six days per week from November 4, 1996 through August 31, 1997 for hauls done for WML alone.
| «WASTE MANAGEMENT OF LOUISIANA, L.L.C.
We first examine the case presented by WML. In Transway, Inc. v. Louisiana Pub. Serv. Comm’n, 253 La. 933, 221 So.2d 53, 56 (1969), this court held that the purpose of La. R.S. 45:166 is to suppress traffic in dormant or abandoned certificates. The transportation industry is such that if one motor carrier drops out of business, even for a short period of time, the traffic will automatically be moved by other existing and competing carriers. James Julian Weinstein, Sales and Transfer of “Dormant” Carrier Certificates of Public Convenience and Necessity, Mass. L.Q. 73 (April 1953). Thus, the traffic is absorbed by those carriers remaining in the field after a short period of time and many may expand their equipment and facilities to handle the freight of the carrier that discontinued business. Id. Thereafter, if those dormant operating rights are purchased by another and revitalized *754 into active competition with the old traffic, the competitive situation can be severely-disrupted to the detriment of all carriers that took up the slack and, eventually, to the public. Id.
The six month substantial operation requirement of La. R.S. 45:166(B) was designed to prevent this abuse in the motor transportation industry and “to correct the evils resulting from unrestrained and indiscriminate trafficking in public certificates and permits.” Matlack, supra at 122; Herman Bros., Inc., 564 So.2d 294. The clear language of the statute requires that an owner of a certifícate or permit “shall have for a period of six consecutive months, immediately prior to the lease transfer or use thereof by one other than the owner, substantially operated all rights under said certificate or permit.” The six month period contemplated by the statute must be complete when the application for approval is filed with the Commission. Herman Bros., Inc., supra. Thus, we must first review the Commission’s conclusion that WML proved it has substantially operated all the rights under its certificate for six consecutive months immediately prior to filing its application to transfer said certificate. We conclude WML has not satisfied its burden under La. R.S. 45:166(B) as a matter of law.
In reaching its conclusion, the Commission had before it one invoice for a regulated haul, dated a month prior to its application for transfer, and vague testimony, unsupported by any documentary evidence or any other corroborating circumstances, as to four outstanding bids for regulated hauls under its certificate. The Commission, relying on the existence of the invoice |3and the four bids, combined with the fact that WML was ready, -willing, and able to accept work for regulated hauls, found WML had complied with the requirements of La. R.S. 45:166(B). The Commission therefore found, as a factual matter, that the facts of one regulated haul and four outstanding bids were established. In determining whether, as a matter of law, WML has satisfied its burden of proving by a clear preponderance of the evidence that it substantially operated all rights under its common carrier certificate, we will give deference to the Commission’s findings and assume, for purposes of this appeal, that WML completed one regulated haul, submitted four bids for regulated hauls, and was ready, willing, and able to accept work for regulated hauls for a period of six consecutive months prior to the filing of its application for approval of the transfer.
The statute requires that the operations under the certificate sought to be transferred be “substantial.” In light of the fact that the purpose of the statute is to suppress traffic in dormant or abandoned certificates, we find that operations must be substantial in terms of both duration and nature.
The evidence presented by WML shows it received a total gross revenue of $0.00 for regulated hauls during the time period between April 1996 and June 1997. Even assuming WML completed one regulated haul subsequent to June 1997, and had four bids outstanding to perform regulated hauls, such conduct was at most only fragmentary and occasional business under its certificate. Consequently, we cannot conclude such infrequent conduct is sufficient to be classified as “substantial” in duration. Such token activity cannot satisfy WML’s burden of proving substantial operation by a clear preponderance as a matter of law. Cf. Transway, supra, (concluding that 1337 shipments of freight during a four-month period, a total of 2,774,074 pounds of freight, constituted “substantial” operations under a certificate of public convenience and necessity). See also A.B. & C. Motor Transp. Co. v. Department of Public Utilities, 329 Mass. 719, 110 N.E.2d 377 (1953) (holding that the evidence presented to satisfy a “bona fide business” requirement did not warrant a transfer of a certificate where the transferor sold all of its thirty-five trucks and equipment with *755 the exception of one small, old truck and performed only fragmentary and occasional business for several months prior to seeking approval of three certificates for long and extensive routes); Massachusetts Furniture & Piano Movers Ass’n v. Department of Pub. Utilities, 350 Mass. 563, 215 N.E.2d 769 (1966) (holding that its public service commission erred when it granted the sale of a certificate when the transferor presented no evidence of any normal business activities for ten months and had engaged only in token activity producing a total gross revenue of $490.88 for the two months prior to filing the application).
Similarly, we conclude that WML’s performance of one regulated haul and submission of four bids for regulated hauls cannot constitute operations “substantial” in nature as a matter of law. WML’s common carrier certificate allows it to transport certain types of waste statewide. Thus, the nature of operations under its certificate must involve transporting, or moving, waste from one location to another. The mere submission of bids in the hopes of securing future contracts to transport certain types of waste under its certificate is not in the nature of operations authorized by WML’s common carrier certificate. Consequently, the bids cannot serve to constitute operations “substantial” in nature under La. R.S. 45:166(B). On the other hand, the one regulated haul performed by WML is in the nature of operations authorized by the certificate. In the context of the instant case, however, we cannot conclude that one such haul rises to the level of “substantial” operation under the certificate as a matter of law.
As explained above, the Commission’s conclusion must be reversed unless WML’s failure to substantially operate all rights under its certificate for a period of six consecutive months prior to its filing of the application of approval with the Commission was due to bankruptcy, receivership, or other legal proceedings, or to other causes beyond its control. There are no allegations that such a failure was due to bankruptcy, receivership, or other legal proceedings. Instead, WML argues that as a result of the Commission’s General Order of January 9, 1989, which exempts from regulation by the Commission any transportation of waste by WML to facilities owned or operated by WML, its failure to engage in regulated hauls is due to causes beyond its control. The phrase “or to other causes beyond his or its control” in La. R.S. 45:166(B) “broadly extends the exemption from the statutory prohibition to any other cause, no matter from what source, provided it is beyond the control of the operator.” S. A. Harris Transfer & Storage, Inc. v. Louisiana Pub. Serv. Comm’n, 240 La. 1059, 127 So.2d 148 (1961).
WML admits that it prefers to engage in exempt hauls because such hauls carry less risk for indemnification purposes. While WML is certainly entitled to conduct the vast majority of | nits business in such exempted transactions, it does so voluntarily and through its own choosing. Clearly, its choice to operate outside the parameters of its certificate is not a cause beyond its control. Cf. Transway, supra, (finding a strike threat that impeded operations was due to causes beyond the carrier’s control).
In the alternative, WML relies on Mat-lack, supra, for the proposition that if a carrier is ready, willing and able to carry, the exception for “other causes beyond its control” is satisfied and a common carrier certificate can be transferred. However, this reliance on Matlock is misplaced. In that case, the carrier argued that the Commission erred in canceling its certificate in light of the fact that it was ready, willing, and able to haul cement, but was unable to obtain any business “despite efforts exerted in this respect,” id. at 119; therefore its failure to secure traffic in this field was due to causes beyond its control. In concluding that the six month period contained in subsection (C) was necessarily *756 confined to the period immediately prior to the date of citation for cancellation, this court specifically declined to determine whether the Commission’s ruling to cancel the certificate was “predicated on the conclusion that failure to secure business was not a matter beyond [the carrier’s] control, or whether on the conclusion that the mere fact that [the carrier] was ready, able and willing to haul ... did not constitute operation ‘to a reasonable extent.’ ” Id. In this case, WML, the Commission, and the trial court have misinterpreted Matlack in order to find that WML’s being ready, willing and able to engage in regulated hauls is enough to satisfy the requirements of the statute. As explained above, Matlack simply does not hold that a carrier need only be ready, willing and able to haul to fulfill the requirements of La. R.S. 45:166(B).
For all the foregoing reasons, we hold the Commission erred as a matter of law in concluding that WML satisfied the requirements of La. R.S. 45:166(B) and approving the transfer of its common carrier certificate to CEI. The district court’s judgment affirming the Commission’s order in this regard is therefore reversed.
CUSTOM ECOLOGY, INC.
Because we hold that the Commission’s order regarding WML’s compliance with La. R.S. 45:166(B) is erroneous as a matter of law and therefore reverse its approval of the transfer, the issue of whether CEI has met the requirements of La. R.S. 45:166(B) is now moot. | ^.Consequently, we decline to address this issue.
CONCLUSION
For the reasons assigned, we hold that Waste Management of Louisiana, L.L.C. has failed to carry its clear preponderance burden of substantial operation for six consecutive months prior to its application to transfer its Common Carrier Certificate No. 5653-G to meet the requirements of La. R.S. 45:166(B). Accordingly, the judgment of the district court affirming this ruling of the Louisiana Public Service Commission as contained in its Order No. T-22757 is reversed. We decline to address whether Custom Ecology, Inc. has carried its clear preponderance burden of substantial operation for six consecutive months prior to its application to transfer its Contract Carrier Permit No. 1099-G to meet the requirements of La. R.S. 45:166(B) finding this issue is now moot.
REVERSED.

 Marcus, J., not on panel. See Rule IV, Part 2, § 3.

. Waste Management of Louisiana, L.L.C. was formed in December 1996. The company had previously been Waste Management of Louisiana, Inc. However, when the company reformulated internally from an ‘Tnc.’’ to a “L.L.C.” it was required by the commission to cancel its previous certificate (No. 5653-F) and have one issued in its new name (No. 5653-G). Protestants argue that the name change is irrelevant as the transportation authority itself did not change at all.

. In fact, in a separate proceeding, CEI's failure to file these contracts resulted in a fine being levied by the Commission (Order No. T-22675) of $28,671.00 along with a $500.00 fine for not filing the contracts and a $500.00 fine for not filing owner/operator agreements.