25 So.2d 237

**SMITH v. TOWN OF VINTON.**

No. 37751.

Feb. 11, 1946.

Cline, Thompson, Lawes & Cavanaugh, of Lake Charles, and Robert P. Hunter, of Shreveport, for plaintiff and appellant.

Preston L. Savoy, of Lake Charles, for defendant and appellee.

HAMITER, Justice.

Plaintiff, William R. Smith, who operates under the trade name of Electric Contracting Company, is appealing from a judgment dismissing his suit, the district court having sustained exceptions of no right and no cause of action directed by defendant, the Town of Vinton, to the allegations of the petition.

To summarize the petition's substantial factual averments, which are to be accepted as true for the purpose of considering defendant's exceptions, plaintiff on March 20, 1944, entered into a verbal contract with W. J. Romero, Mayor of the Town of Vinton, for his furnishing of the labor and equipment necessary in the repair of the electrical distribution system owned and operated by that municipality, he to be paid weekly as the work progressed. The Mayor, at the time, represented that he was duly authorized to make the contract and to proceed with the work, and further that an emergency existed because the system was in a condition dangerous to life and property, on all of which representations plaintiff relied. Defendant used the distribution system not only for municipal purposes, but also in furnishing electricity to the inhabitants of the town and to persons residing outside of its corporate limits.

Pursuant to the contract plaintiff commenced the repair job on March 27, 1944, and continued it until April 11, 1944, at

which time he was forced to cease his work because defendant's failure to make any of the agreed payments. For the labor, materials and equipment furnished and used between those dates defendant is indebted to plaintiff in the sum of $3986.09.

Throughout the construction period all of the members of the Town Council witnessed the performance of the work and knew that the repairs were being made. Also they knew that the system was in a condition dangerous to life and property, that an emergency existed, and that plaintiff had been authorized by the Mayor to proceed with the undertaking. Notwithstanding such knowledge, not one offered any protest or objection. Defendant has used and is using the construction work performed on the system and is reaping the benefits of the labor, materials and equipment furnished by plaintiff at his cost and expense.

After specially pleading estoppel, plaintiff prayed for judgment on the contract in the sum of the alleged indebtedness, or, alternatively, on quantum meruit for the amount of the claim.

In this court, defendant, under its exceptions, first calls attention to plaintiff's failure to allege that the Town of Vinton, its Mayor, or anyone else, obtained the consent of the State Bond and Tax Board for the incurring of the debt, and it contends that, because of such omission, the petition discloses no cause of action.

Act No. 6 of the Second Extra Session of the Legislature of 1935 created the State Bond and Tax Board, and it de-

clared to be null, void and unenforceable any contract, debt, obligation, bond, or other evidence of indebtedness whatsoever, incurred or issued by any of the named political subdivisions, boards and districts, including municipalities, without the consent and approval of such Board. The statute uses very broad, sweeping language, and under a literal construction of it plaintiff's claim would be affected. But in applying a statute to specific cases it is necessary to determine the intent of the Legislature in enacting it. A well established rule of statutory construction is that courts will not impute meanings to statutes which will lead to absurd results or extend the statutes to situations which the Legislature never intended should be covered thereby. That this rule is recognized in our jurisprudence is disclosed by the following expressions:

"* * * But even if the language of the act is as broad as opponents contend, it is then the duty of the court to restrain its operation within narrower limits than its words import, if the Court is satisfied that their literal meaning would extend to cases which the legislature never intended to include." In re Hibernia Bank & Trust Co., 185 La. 448, 169 So. 464, 473.

"In the construction of statutes absurd results should be avoided, and when the literal construction would produce such a result, the letter of the law must give way to its spirit and the statute should be construed so as to produce a reasonable result. * * *" Gremillion v. Louisiana

Public Service Commission et al., 186 La. 295, 172 So. 163, 165.

"* * * The function of the courts of justice is to interpret the laws so as to give them the meaning which the lawmaker obviously intended them to have, and not to construe them so rigidly as to give them absurd or ridiculous meanings." State ex rel. Womack v. Jones, 201 La. 637, 10 So.2d 213, 217.

■ The Town of Vinton is authorized by law to own and operate an electrical distribution system. Act 136 of 1898, as amended (Dart's Statutes Section 5420), grants to municipal corporations the power "to purchase or erect and to own, operate, and maintain electric and gas light plants, * * * any other revenue producing proper public utility, within or without their corporate limits and to regulate the same and to fix the rates for the consumption of the service so furnished." And the same act (Dart's Statutes Section 5423) gives to the Mayor and Aldermen of cities and towns the authority "to provide for the lighting of streets, parks, and public grounds and the erection of lamps and lamp posts." Having installed the system, pursuant to the mentioned statutory authorization, of necessity the Town of Vinton must maintain it in good repair and in an operating condition. It follows naturally that the repair work required in this case, and which was performed by plaintiff, was within the ordinary and usual course of the town's administration; it was not an unusual undertaking.

In Laycock v. City of Baton Rouge, 35 La.Ann. 475, the court held on rehearing that the purchasing of gas by the defendant was an act within the course of ordinary administrative duties and, therefore, exempt from the effect of Revised Statutes Section 2448 requiring that provision for payment of a debt be made by a municipality before the contracting of it.

The holding of the Laycock case was affirmed in Blanks v. City of Monroe, 110 La. 944, 34 So. 921, 923. In allowing recovery for a balance due for water and light furnished the municipality under contract, the court said:

"It has more than once been held by this court that contracts such as that here sued on, whereby municipal corporations undertake to make provision in advance for such prime necessities as light and water, and incur obligations therefor, to be met from time to time, as those necessities are furnished, from current revenues, do not fall within the restrictive operation of Rev. St.1870, § 2448, which prohibits such corporations from contracting debts without providing, in the ordinances by which they are contracted, for their payment. * * *"

If the purchasing of necessities such as gas and water and light is considered as being within the course of ordinary municipal administration, so must the repair and maintenance of a city's electrical system, when it is legally owned and operated as in this case, be considered.

■ To interpret Act No. 6, 2d Ex.Sess., of 1935, literally, that is as applying to

"any contract, debt, obligation, bond, or other evidence of indebtedness whatsoever", incurred or issued by the numerous governmental subdivisions, districts and boards named, would produce, in our opinion, unreasonable and absurd results. Moreover, we are convinced that the Legislature never intended that the debts or obligations incurred by a public body in the conduct of its routine business should be affected by the statute. Innumerable obligations are required to be created by governmental agencies from time to time in the purchasing of various items and in the employing of additional persons needed to meet unanticipated and emergency conditions arising in the ordinary course of operation. Now must all of these immediately necessary debts be passed on by the State Bond and Tax Board before the agencies can be held legally liable therefor? We think not. If such were the result intended, it would not only place an unreasonable burden upon the administrators of municipalities and other governmental bodies, with a consequent hindrance to their operations, but also it would overburden the Board to the extent of preventing its·efficient functioning in matters of real importance at which the statute is aimed.

As evidence that a result of that kind was not contemplated, the Legislature of 1944, by Act 285, provided that the discussed requirement "shall not apply to purchases made in the ordinary course of administration on terms of credit not to exceed ninety days."

What the Legislature had in mind in the enactment of the 1935 statute was explained in the case of National Bank of Commerce v. Board of Supervisors, 206 La. 913, 20 So.2d 264, 269. Therein we said:

"The object of the act was primarily to protect the faith and credit of the State, and, to accomplish that object or purpose, it is provided that parishes, municipalities, public boards and political or public corporations, subdivisions, and taxing districts shall not incur excessive debts, shall not levy overburdensome taxes, shall not grant excessive mortgages on property or revenue-producing utilities, and shall not grant excessive and unwarranted pledges of their revenues. The words 'excessive', 'overburdensome', and 'unwarranted' relating to debts, taxes, and mortgages are all used in the title to the act. The object of the act was not to prohibit the incurring of debts, the levying of taxes, or the mortgaging of property by public boards and subdivisions of the State, but to prohibit the incurring of excessive debts, the levying of overburdensome taxes, the excessive mortgaging of property, and the excessive and warranted pledging of revenues."

The contract to borrow money, involved in that litigation, was held to be violative of the statute and null and void; clearly it was an excessive debt, being one from which the state agency received no benefit whatsoever.

Inasmuch as the instant agreement arose in the usual course of operating the

defendant's affairs, and hence it is not affected by the provisions of Act No. 6, 2d Ex.Sess., of 1935, we conclude that plaintiff was not required to allege the obtaining of the consent and approval of the State Bond and Tax Board for the incurring of the indebtedness.

Next, defendant urges that there has been no compliance with the provisions of Act No. 73 of 1926, as last amended by Act 127 of 1940 (Dart's Statutes Section 6730), which requires all public work exceeding the sum of $500 to be advertised and let by contract to the lowest responsible bidder. The statute itself renders this contention untenable, it reciting that "the procedure herein shall not be necessary in cases of extreme public emergency or for labor necessary and used in the maintenance of public works built and completed."

The third ground relied on by defendant under its exceptions, and the one forming the basis of the district court's decision, is that the petition does not allege the granting of authority by the Board of Aldermen for the Mayor's entering into the agreement with plaintiff. As a general rule a Mayor acting alone is without power to execute a contract incurring a debt on the part of his city or town. He can act only with and under the authority, usually evidenced by a resolution or ordinance, of the Board of Aldermen. But when with the full knowledge of all the members of that Board, and with no objection or protest being voiced by any of them, the Mayor contracts for and engages in the making of necessary repairs to a municipally owned and operated utility, the town upon being sued on the contract will not be permitted, rather it is estopped, to urge lack of the Mayor's authority in the incurring of the debt. Especially is this true when the work performed is used for the advantage and benefit of the town. Burk v. Livingston Parish School Board, 190 La. 504, 182 So. 656; Turfitt v. Police Jury of Tangipahoa Parish, 191 La. 635, 186 So. 52, and J. D. Adams Co. v. Jackson Parish Police Jury, 199 La. 270, 5 So.2d 892. A situation of the kind just described is alleged in the petition of this cause; whether plaintiff can prove his allegations is a question which is not before us. If true, and they are deemed so for the purpose of this consideration, his special plea of estoppel must be sustained.

Finally, defendant contends that the contract cannot be enforced for the reason that means for paying the debt were not provided for as required by Revised Statutes Section 2448. This contention is disposed of by the decisions in Laycock v. City of Baton Rouge and Blanks v. City of Monroe, cited and discussed supra, they standing for the proposition that the mentioned statutory provision is inapplicable to ordinary and necessary administrative expenses (the same as the debt in the instant case), payable, and expected to be paid, out of the current revenues. Those authorities are distinguishable from the cases relied on by defendant as supporting its contention, some of which are Citizens' Bank v. Town of Jennings, 107 La. 547, 548, 32 So. 66, Chandler & Chandler

v. City of Shreveport, La.App., 162 So. 437, United States Rubber Co. v. Town of Breaux Bridge, La.App., 165 So. 721, in that the latter involved purchases or obligations not arising in the ordinary course of administration. The distinction is clearly pointed out in the Citizens' Bank case, a suit to recover the purchase price of certain fire engines, the court observing:

"The purchase of the engines in question was not an ordinary, current, administrative expense of the town of Jennings payable out of the annual appropriation of current revenues, as was the debt sued for and held collectible in Laycock v. City of Baton Rouge, 35 La.Ann. [475], 479. * * *"

For the reasons assigned, the judgment of the district court is reversed and set aside, the exceptions of no right and no cause of action are overruled, and the case is remanded for further proceedings according to law and consistent with the views expressed herein.

O'NEILL, C. J., and HAWTHORNE, J., do not take part.