DENNIS, Justice,
dissenting.
I disagree with the majority’s holding that the Louisiana Prevailing Wage Statute (“PWS”) authorizes the Department of Labor (“DOL”) to issue and enforce against a contractor an administrative order to pay wage deficiencies and penalties due a subcontractor’s workers when the state contracting agency has no accrued payments withheld (“retainage”) with which to satisfy the order. Because I believe a fair and impartial reading of the PWS leads to a result different from that found by the majority, I respectfully dissent.
THE DOL IS NOT AUTHORIZED UNDER THE PWS TO ISSUE OR ENFORCE AN ORDER TO PAY.
The PWS is the legislature’s attempt to ensure that all workers on public projects are paid the wages prevailing in the community where the contract is to be performed. To achieve this end the statute focuses on the retainage mechanism: the withholding of accrued payments from the contractor to satisfy any wage deficiencies or penalties found due a worker under the terms of the contract and this law. The statute vests in both the State and the agency letting the contract this power to withhold and disperse retainages. Where no retainage exists, however, an underpaid worker must resort to other means for obtaining his legally determined wage. See, e.g., La. R.S. 38:2242.
The enforcement scheme of the PWS is simple. In plain terms, subsection E provides that every public contract shall stipulate that accrued payments are subject to being withheld, and are payable to any worker on the project who receives less than prevailing wage. The DOL or the agency letting the contract determines whether a worker has been underpaid. Whenever a wage deficiency is found, subsection F authorizes “the State of Louisiana or its ... agency ... letting the contract” to order the contractor, upon receipt of written notice, to pay the worker the deficiency plus a penalty where appropriate. The contractor has rights of appeal to both the DOL and the Nineteenth Judicial District Court. When the underpayment is intentional, in addition to the penalty, the contractor may be “blacklisted” under subsection H from participating in state contracts for one year.
As a penal statute, the PWS is subject to our rule mandating strict construction of penal provisions in favor of the individual, and against the state and the imposition of the penalty. International Harvester Credit v. Seale, 518 So.2d 1039 (La.1988); State v. Shreveport News Agency, Inc., 287 So.2d 464 (La.1973); Tichenor v. Tiche-nor, 190 La. 77, 181 So. 863 (1938). Our jurisprudence instructs that under this rule penal laws must not be interpreted to embrace cases not within their letter even though within their spirit. Vander Slugs v. Finfrock, 158 La. 175,103 So. 730 (1925); Tucker v. Huval, 374 So.2d 745 (La.App. 3d Cir.1979).
Despite this well settled rule, the majority, without offering any justification, liberally interprets the penal provisions of the PWS in favor of the state and against the penalized party. The majority uses several vague and doubtful elements of this and other statutes to contrive its desired result —the unprecedented and unwarranted creation of an independent right of action on behalf of the DOL to obtain a money judgment against a contractor under the auspices of the PWS's administrative provi *69 sions. Because the court s liberal construction is in direct conflict with a cardinal rule of statutory interpretation, I cannot join the majority opinion.
Applying the principles of strict construction to this instance reveals that the DOL acted contrary to the dictates of the PWS by issuing and attempting to enforce against Gibbs an order to pay the subcontractor’s workers. Only the “State of Louisiana” (the Attorney General) or “the agency letting the contract” (DHHR) is statutorily empowered to render and enforce such an order against Gibbs. While the statute delegates the “finding” function to the DOL or the state contracting agency, the “ordering” function is expressly reserved for the State or the state contracting agency in language plainly distinguishing between the DOL and the State of Louisiana. R.S. 38:2301(F). Where the law is clear, its letter cannot be disregarded under the pretext of pursuing its spirit. Gill Trailer & Equipment Rentals, Inc., v. S. D’Antoni, 282 So.2d 714 (La. 1973); La. C.C. art. 13 (1870). Consequently, the majority’s contention that the DOL and the State are synonomous for purposes of this statute is insupportable. Doubtless, had the legislature intended that, it easily could have done so in clear and unmistakeable terms — it would not have substituted “State of Louisiana” for “Commissioner of Labor” within subsection F. According to principles of strict construction, the DOL is an unauthorized party having no right to proceed against Gibbs under the PWS.
DEFICIENCIES AND PENALTIES ARE NOT RECOVERABLE UNDER THE PWS WHERE NO RETAINAGE EXISTS.
Another impediment to the enforcement of this order to pay is the absence of withheld contract funds with which to satisfy the wage deficiencies and penalties. The statute’s enforcement scheme relies on the use of retainages to offset any wage deficiencies and penalties found due an eligible worker when the contractor does not pay voluntarily. In the words of the statute, “the state or its ... agency ... in charge of the particular contract ... is authorized and directed to pay directly to work[ers] ... from any accrued payments withheld under the terms of the contract any wages found to be due workfers] ... pursuant to this section.” La.R.S. 38:2301(G). The same applies for penalties found due. Thus, upon issuance of written notice to the contractor of the order to pay pursuant to subsection F, a worker is paid directly from the retainage established especially for this purpose and need not wait until the contractor pays voluntarily or concludes the appeals process.
Consequently, where there are no “accrued payments withheld” to apply toward any underpayment that may later be discovered, the PWS is inoperative as a means for carrying out the goals embodied in the statute. In this case, therefore, the order against Gibbs is unenforceable because the requisite retainage applicable toward the satisfaction of wage deficiencies and penalties does not exist. The PWS directs the state or the contracting agency, only, to pay workers wages and penalties due, and only from accrued payments withheld.
Alternative methods of exacting the deficiency or penalty from an errant contractor are not provided under the PWS nor can they be supplied by inference. Such inferences are proscribed by the already discussed canons of interpretation requiring that statutes imposing penalties be strictly construed. Notwithstanding, the majority erroneously construes the penal provisions of the PWS as giving the DOL the right to order a contractor to pay from his own pocket penalties arising from the subcontractor’s violation of the statute. Surely, had it so intended, the legislature was capable of expressly authorizing the DOL to seek or render money judgments in court as it has done in La. R.S. 23:1471-1750.10.
That the legislature never intended enforcement of orders to pay apart from contract retainages is further bolstered by the conspicuous absence of prescriptive periods —time limitations within which the state must issue such orders under the statute. According to the majority’s view of the PWS, a contractor could be hailed into *70 court and held liable in judgment for the violations of its subcontractor pursuant to an order to pay instituted after an ordinary suit seeking unpaid wages would have prescribed. No where has the legislature indicated an intent to permanently deprive even an errant contractor of repose under the PWS, nor would such a result be reasonable. It is utterly repugnant to our deep-rooted traditions of fairness and due process to hold an individual responsible indefinitely for the statutory violations of a third party, particularly where the individual is without knowledge of or complicity in the violation. Such unwarranted disregard of fundamental rights is precisely what the majority opinion permits.
To avoid irrational and unjust results, the PWS must be understood to allow wage deficiencies and penalties due to be satisfied only from retainages where voluntary payment is not forthcoming. This construction of the PWS is the most reasonable and logical interpretation consistent with the directive that courts must not impute meanings to statutes which will lead to absurd results or include situations not intended by the legislature. State v. Union Tank Car Company, 439 So.2d 377 (La.1983); Hayes v. Orleans Parish School Board, 237 So.2d 681 (La.1970); Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237 (1946). Because I believe the majority’s interpretation of the PWS represents a misreading of the law, I am compelled to dissent.