Dear Mr. Henry:
You have requested the opinion of this office concerning the legality of a recent board action by the Board of Aldermen of the Village of Killian. A review of the minutes of that special meeting held February 15, 2000, indicates that two of three aldermen were present. Neither the mayor nor the third alderman was present. A motion was made by the mayor pro tempore to suspend the services of the town auditor, which was approved by the affirmative vote of both aldermen present.
The foregoing action was taken apparently because the auditor submitted a total billing of $15,000.00 to the Village for payment. The budget ordinance adopted for the 1999-2000 fiscal year reflects that only $6,000.00 was budgeted for these services. See budget ordinance dated August 4, 1999, attached. We have also been provided a copy of the auditor's letter of engagement, signed by Mayor Gillis Windham, on August 4, 1999, the same date that the budget ordinance was approved. The letter of engagement lacks any mention of a specific fee arrangement.
The legislative power of the board of aldermen in a Lawrason Act municipality encompasses control of the municipal fisc. The mayor cannot supercede the fiscal control of the board of aldermen unilaterally. See Attorney General Opinions 96-343, 94-520, and 90-531; see also Smith v.Town of Vinton, 25 So.2d 237 (La. 1046).
The village treasurer can only disburse municipal funds on a warrant "issued by the order of the mayor and board of aldermen." See R.S.33:425.[1]
Further, the adoption of a municipal budget does not also authorize automatic expenditures. Every expenditure requires an appropriation, and every warrant for the withdrawal of funds from the municipal treasury requires a specific ordinance. See R.S. 33:462.[2]
Thus, the mayor may not expend village funds, in this instance, to pay the $15,000 bill submitted, without a specific appropriation by ordinance approved by the board of aldermen.
Of further import to our discussion is R.S. 39:1305 of the Local Government Budget Act, providing in pertinent part:
 D. A budget proposed for consideration by the governing authority shall be accompanied by a proposed budget adoption instrument. The budget adoption instrument for independently elected parish offices shall consist of a letter from the independently elected official authorizing the implementation of the adopted budget. The budget adoption instrument for any municipality, parish, school board, or special district shall be an appropriation ordinance, adoption resolution, or other legal instrument necessary to adopt and implement the budget document. The adoption instrument shall define the authority of the chief executive and administrative officers of the political subdivision to make changes within various budget classifications without approval by the governing authority, as well as those powers reserved solely to the governing authority.
 E. The total of proposed expenditures shall not exceed the total of estimated funds available for the ensuing fiscal year. (Emphasis added).
The budget ordinance does not reflect any authority granted to the Mayor to make a change to the $6,000 amount allocated the auditor. Thus the budget ordinance itself would have to be amended by the board of aldermen in order to grant such an increase.
Note that the mayor pro tempore may not unilaterally fire the town auditor. The authority to fire village personnel is generally vested in the mayor, subject to the concurrence of the board of aldermen.
See R.S. 33:404(3)A.[3]
Finally, Attorney General Opinion 00-232 stands for the proposition that once the mayor provides a recommendation for village auditor, which is approved by the board of aldermen, a contract is formed. Thereafter, "the auditor serves at the pleasure of the mayor and may be terminated at any time" if no contract period is specified. See Opinion 00-232, page 2, attached. However, the opinion is inapplicable here, because the mayor pro tempore, and not the mayor, initiated the firing in the facts related.
Should you have further questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
[1] R.S. 33:425 provides:
§ 425. Duties of treasurer
The treasurer shall receive, safely keep, and pay out according to law, all monies belonging to the municipality. He shall keep accurate accounts of all receipts and disbursements, and shall make report, in writing to the mayor and board of aldermen, at each regular meeting, of the finances of the municipality; shall perform all other duties that may be prescribed by ordinance; and shall pay out money only on the warrant issued by the order of the mayor and board of aldermen.
[2] R.S. 33:462 provides:
§ 462. Expenditures pursuant to appropriation; warrants
All expenditures of money for any purpose whatever shall be in pursuance of a specific appropriation made by order in no other manner and shall be made in accordance with the provisions of R.S. 38:2211 et seq. Every warrant drawn on the treasury shall express on its face to whom issued and for what purpose allowed; and the ordinance authorizing its issue shall be cited by minute book and page, in or upon it.
[3] R.S. 33:404(3)A provides:
§ 404. Duties of mayor
A. The mayor shall have the following powers, duties, and responsibilities:
* * * * *
(3) Subject to applicable state law, ordinances, and civil service rules and regulations, to appoint and remove municipal employees, other than the employees of a police department with an elected chief of police. However, appointment or removal of a non-elected chief of police, the municipal clerk, the municipal attorney, or any department head shall be subject to approval by the board of aldermen, except that in the case of a tie vote, the recommendation of the mayor shall prevail. Furthermore, selection or removal of any person engaged by a municipality to conduct an examination, review, compilation, or audit of its books and accounts pursuant to R.S. 24:517 shall be subject to approval by the board of aldermen of that municipality.
OPINION NUMBER 90-531
January 19, 1991
71 — MUNICIPALITIES LSA-R.S. 14:140; LSA-R.S. 33:385
State law prohibits officers of Lawrason Act municipalities from entering contractual relationships with employing municipality
William E. Weatherford Hines, Jackson Hines Certified Public Accountants P.O. Box 2188 Natchitoches, LA 71457
Dear Mr. Weatherford:
Your firm is currently conducting an audit of the City of Winnfield, and have propounded several questions of law for an opinion by the Attorney General in connection with this audit. We answer questions separately.
1. Can an alderman who owns the only concrete plant in Winn Parish sell concrete to the City of Winnfield and contractors for the City? The only alternative source of concrete is 40 miles away and the cost of transporting it is prohibitive.
Answer: LSA-R.S. 33:385 generally prohibits any alderman or other officer of the municipality from being "directly or indirectly interested in any work, business or contract, the consideration of which is to be paid from the treasury of the municipality . . ."
This facially would prohibit the business relation you describe. R.S.33:385 does provide an exception to the prohibition for the town of Erath. There is no sole-source exception generally for all municipalities that is either express or implied. The import of the mandatory wording of the statute is that this alderman may sell concrete to the City of Winnfield and its contractors, or he may serve on the board of alderman, but he cannot do both at the same time.
In a telephone conversation with the alderman in question, he reported that he had furnished concrete in small amounts to the City of Winnfield as a convenience to the City. The amounts involved were usually no more than a yard at a time. Upon being informed that even such minor business transactions with the City violated state law, he stated that he would immediately terminate all sales of concrete to the City in order that he might continue to serve as an alderman. This decision would eliminate
2. The City of Winnfield leases from the Chief of Police, the public works director, and several police officers their private automobiles which they then utilize as their official automobile for their job functions. Does this violate R.S. 33:561 or R.S. 33:713?
Answer: The answer is negative. R.S. 33:561 does not apply to Lawrason Act municipalities enabled by R.S. 33:321 — 463, but is rather a provision of the Commission Plan of Government for municipalities established by R.S. 33:501 — 571. R.S. 33:713 is a provision of the Commission-City Manager Plan for municipalities established by R.S. 33:611 — 851.
However, the contracts of lease between the chief of police, the public works director, police officers, and the City of Winnfield are prohibited by R.S. 33:385, in that these persons are "officers" of the municipal corporation. R.S. 33:386A. These facts further present a prima facie violation of LSA-R.S. 14:140.
These lease contracts are legally null and void ab initio, in that both the City and the officers in question lacked legal capacity to perfect such contracts of lease.
The allegations that the City of Lake Charles may or may not utilize similar leases is immaterial, for two reasons. First, the City of Lake Charles operates under a home rule charter plan of government, and is not subject to R.S. 33:385 of the Lawrason Act. Secondly, this type of contract is illegally per se, and contra legem customs do not supercede positive law in Louisiana.
3. The mayor is budgeted an expense account of $6,000 a year and received $500
[EDITORS' NOTE: THE TEXT AT THE BOTTOM OF THIS PAGE IS MISSING.]
The legislature power of the board of aldermen encompasses control of the municipal fisc. The mayor cannot unilaterally supercede the fiscal control of the municipal governing authority. Smith v. Town of Vinton,209 La. 587, 25 So.2d 237 (1946); Opinions of the Attorney General No. 90-612, No. 90-616.
The City treasurer can only disburse municipal funds on a warrant "issued by the order of the mayor and board of aldermen." LSA-R.S.33:425. (Emphasis added)
A budget plans expenditures but does not authorize expenditures. Every expenditure requires an appropriation, and every warrant for withdrawal of funds from the municipal treasury requires a specific ordinance. R.S.33:462.
If the monthly payments of $500 were made without an appropriation ordinance, they were unauthorized expenditures of public funds. R.S.33:462.
4. The chief of police of the City of Winnfield owns and operates a telephone "beeper" service. The City of Winnfield purchases this service for the use of the personnel operating the municipal ambulance service. Does this violate any statute?
Answer: The chief of police, a municipal officer, contracts with the municipality and receives funds from the treasury of the municipality. This is a starkly clear violation of R.S. 33:385. Such contract is null and void ab initio, as neither the chief of police nor the City of Winnfield possessed legal capacity to enter into a legally prohibited contractual relationship.
5. The City of Winnfield has contributed public funds to the Winnfield Film Commission, a private entity associated with the Winnfield Chamber of Commerce. Is this a lawful expenditure?
Answer: There is
[EDITORS' NOTE: THE TEXT AT THE BOTTOM OF THIS PAGE IS MISSING.]
6. The City of Winnfield donated a used dump truck to the Village of Atlanta. Is this lawful?
Answer: Negative. It is a unconstitutional donation of public property. See answer to question 5 above.
Because the subject matter of this opinion also presents possible violations of the Code of Governmental Ethics, the opinion request and this opinion are being forwarded to the Board of Ethics for Elected Officials for its review and such action as it finds appropriate.
Trusting this to be of sufficient information, I am
Sincerely,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 By: _________________________ CHARLES J. YEAGER Assistant Attorney General
CJY:jv
OPINION NUMBER 94-520
October 18, 1994
71 MUNICIPALITIES 77 OFFICERS — Local Municipal Selection; Qualifications and Tenure; Vacancies
LSA-R.S. 33:321. LSA-R.S. 14:134. LSA-R.S. 33:404(A). LSA-R.S. 24:513(A)(1), LSA.R.S 24:513(4)(c) (d).
Chief of Police of the Town of Ferriday is appointed by the Mayor but must be confirmed by the Board of Alderman. Further the Board's legislative powers include control over the municipal fisc. and the express or implicit authorization is required for all public expenditures. The mayor cannot superced the Board's fiscally control unilaterally.
Ms. Elizabeth A. Davis Alderman, Town of Ferriday 212 N. 2nd Street Ferriday, LA 71334
Dear Ms. Davis,
Our response to your opinion request has been modified pursuant to our recent phone conversation. The issues presented in the opinion request are to be addressed only insofar as they apply to the Chief of Police.
You relate that the Mayor of Ferriday appointed the Chief of Police without the confirmation of the Board of Aldermen. Under these facts, you and the other aldermen present the following issues for our review.
 (1) What responsibilities does the Mayor of a Lawrason Act Municipality have to the town council to request approval of the town's funds prior to the payment of those funds?
 (2) What actions can be taken by the town council to recover the funds paid without the approval of the town council? Consequently, would the Mayor be personally responsible for the unauthorized payment of these funds?
 (3) Since Mr. Wilson is not approved by the town council, what, if any, responsibility would the town have for Mr. Wilson's "official" actions?
 (4) Is this situation something the town council should advise the legislative auditor about?
At the outset, we note that the Town of Ferriday is a Lawrason Act Municipality subject to the provisions of in LSA-R.S. 33:321, et seq.
As predicate to the issues raised herein, you state that the Town of Ferriday has a nonelected chief of police, governed by the provisions of LSA-R.S. 33:404 (A)(3), which in applicable part state:
 . . . appointment or removal of a nonelected chief of police, the municipal clerk, the municipal attorney, or any department head shall be subject to approval by the board of aldermen, except that in the case of a tie vote, the recommendation of the mayor shall prevail. (Emphasis added).
Note that until both the Mayor and the Board of Aldermen concur in the selection of the new Town Chief of Police by the prescribed appointment and confirmation procedure, the chief of police does not legally hold the position. Op. Atty. Gen. No. 88-505.
In response to your first question, the legislative power of the board of aldermen encompasses control of the municipal fisc. Op. Atty. Gen. Nos. 90-612, 90-616. Consequently, the mayor cannot supercede the fiscal control of the town council without the latter's approval. Smith v. Townof Vinton, 209 La. 587, 25 So.2d 237 (La. 1946).
Moreover, the town treasurer can only disburse municipal funds on a warrant "issued by the order of the mayor and board of alderman." LSA-R.S. 33:425; Op. Atty. Gen. No. 90-612.
Therefore, the mayor's expenditure of municipal funds without a specific appropriation by town council ordinance is a power denied him by law.
In response to your second question, the Mayor's refusal to follow these procedures may subject him to the charge of malfeasance in office, a crime defined by LSA-R.S. 14:134 as follows:
 Malfeasance in office is committed when any public employee shall:
 (1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
 (2) Intentionally perform any such duty in an unlawful manner; or
 (3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
 Any duty lawfully required of a public officer or public employee when delegated by him to a public officer or public employee shall be deemed to be a lawful duty of such public officer or employee. The delegation of such unlawful duty shall not relieve the public officer or employee of his lawful duty.
 Whoever commits the crime of malfeasance in office shall be imprisoned for not more than five years with or without hard labor or shall be fined not more that five thousand dollars or both.
Concerning the possible liability of the Mayor for the unauthorized payments to the Chief of Police, we direct your attention to LaFleur v.Roberts, 157 So.2d 340 (La. 1963). The case stands for the proposition that the law limiting or qualifying the authority of a municipal official cannot be disregarded on the basis of the exercise of administrative discretion. The Mayor may be subject to individual liability for a monetary amount if the municipality has suffered pecuniary damage resulting from the Mayor's exercise of power in bad faith. See LaFleur, supra.
Additionally, LSA-R.S. 33:404 imposes an affirmative duty on all mayors to administer in conformity with the ordinances adopted by the board of aldermen. State v. Davis, 614 So.2d 270, 273 (La.App. 3 Cir. 1993). A violation of this duty can constitute the crime of malfeasance in office under LSA-R.S. 14:134. State v. Davis, supra.
Your third question involves whether the town council would be liable for any actions taken by the Mayor's appointee under the guise of his official capacity as the chief of police.
Louisiana jurisprudence has acknowledged the principle of "officer de facto". A de facto officer is defined as "one who is in possession of or who exercises the duties of an office under color of a known and valid appointment or election, but where he failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like." State v. Harcis, 154 So. 628 (La. 1934).
Further, the unauthorized assumption of an office by a person without any color of title may be sufficient to constitute him an officer de facto where he has occupied the office for a considerable length of time with the acquiescence of the public authorities and the public. Garnier v.Louisiana Milk Commission, 8 So.2d 611 (La. 1942).
The jurisprudence relies on this theory mainly for reasons of public policy. If the acts of de facto officers were adjudged invalid, the persons receiving the brunt of any negative repercussions would be third parties and the general public.
Therefore, acts by de facto officers are held to be valid until the officer's title to office is adjudged insufficient. State v. Johnson,192 So.2d 135 (La. 1966). Until then, the officer's acts are "clothed with the same validity as the acts of de jure officers" and may not be collaterally attacked or inquired into by third persons.
The one weakness in the "officer de facto" theory as it applies to your situation is the Mayor's apparent lack of adherence to appointment procedures. However, this fact alone has apparently not defeated the courts' adherence to the theory. In State v. City of New Orleans,125 So.2d 375, 380-81 (La. 1961), the Louisiana Supreme Court stated that the failure of an appointing officer to secure the required approval of the appointment by a required entity does not preclude the appointee's assuming the status of de facto officer.
Your fourth question is answered by LSA-R.S. 24:513 (A)(1), providing:
 A. (1) Subject to Paragraph (3) of this Subsection, the legislative auditor shall have authority to compile financial statements and to examine, audit or review the books and accounts of the state treasurer, all public boards, commissions, agencies, departments, political subdivisions of the state, public officials and employees, public retirement systems enumerated in R.S. 42:698.2 (A), municipalities, and all other public or quasi-public agencies or bodies, hereinafter collectively referred to as the "auditee". The score of the examinations may include financial accountability, legal compliance and evaluations of the economy. efficiency, and effectiveness, of the auditee's programs or any combination of the foregoing. In addition to the authority granted above, the legislative auditor shall have access to and be permitted to examine all papers, books, accounts, records, files instruments, documents, films, tapes, and any other forms of recordation, including but not limited to computers and recording devices, of all auditees. This access shall not be prohibited by Paragraph (3) of this Subsection.
The legislative auditor may audit or investigate a local auditee when "the local auditee exhibits a record of egregious control deficiencies and failures to comply with laws and regulations, " or "the legislative auditor has received complaints of illegal or irregular acts with respect to the local auditee." LSA-R.S. 24:513 (4)(c) (d). We refer you to the Legislative Auditor at 504-342-7237 for further information.
Your current City Attorney should be consulted concerning any future action of the board taken to resolve these issues. Further, note that LSA-R.S. 14:134 requires an intent to violate the law, and this office cannot render an opinion as to whether the statute was actually violated. Finally, your district attorney should also be consulted if the board decides to pursue this matter regarding the current chief of police. The district attorney may begin an action to remove a usurper from office, under the authority of LSA-R.S. 42:71, et seq.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
By: ___________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL 02261
OPINION NUMBER 96-343
SEPTEMBER 3, 1996
71 — MUNICIPALITIES 77 — OFFICERS — Local and Municipal; Selection, Qualifications Tenure; vacancies 90-A-1 — PUBLIC FUNDS CONTRACTS R.S. 33:361, R.S. 33:425, R.S. 33:462, 39:1310(C); LSA-Const. Art. 7, § 14 (1974); Atty.Gen.Op. Nos. 90-612, 90-616
Municipality may expend monies for a properly authorized criminal investigation; may not pay legal expenses incurred by the mayor for personal services performed by the town's attorney; mayor may not legally obligate the town to make expenditures without the board's approval.
Hon. Ray A. Santiny Alderman and Clerk, Town of Grand Isle Post Office Box 200 Ludwig Lane Grand Isle, Louisiana 70358
Dear Mr. Santiny:
We are in receipt of your request for an Attorney General's opinion regarding the payment of legal fees by the Board of Aldermen of the Town of Grand Isle. Specifically, the board is seeking our opinion on the following questions:
 1. Whether it is appropriate or legal for the Town of Grand Isle to expend monies to investigate possible criminal actions in a case which is so closely related to a civil matter between Mayor Valence and Mr. Rosiere.
 2. Whether it is appropriate for the Mayor to authorize these expenditures without having it approved by the board?
Your letter states the following facts: (1) The board was presented with an invoice from the town's attorney, reflecting some charges which may be questionable; (2) The charges are for legal work related to a lawsuit in which Mayor Andy Valence filed against his opponent, Rob Rosiere, in the April primary election; (3) Mayor Valence hired Mr. Nielsen (the town's attorney) to represent him in this lawsuit, but he has claimed that the work which Mr. Nielsen is charging the town is not for work done for personal services for the mayor, but for work related to investigating if some criminal action had taken place during the election; (4) The board has questioned these charges as they were not consulted to authorize Mr. Nielsen to do this work nor is there any money in the town's budget for this purpose.
 Question No. 1
The Town of Grand Isle is governed by a mayor-board of aldermen form of government under the Lawrason Act, R.S. 33:321-481. The governing authority is vested with all powers, rights, privileges, immunities, authorities, and duties and may perform any function necessary, requisite, or proper for the management of its affairs not denied by law. (R.S. 33:361). Therefore, in answer to your first question, it is our opinion that the town may expend monies to investigate a possible criminal action, regardless of a related civil lawsuit between the mayor and his opponent. However, the real question at issue is, if in fact, whether the town authorized Mr. Nielsen, in his capacity as town attorney, to perform the criminal investigation in question.
We are not fact finders, that responsibility lies with the board and/or a court of competent jurisdiction. Therefore, we suggest that the board make a factual determination as to whether Mr. Nielsen, in his capacity as town attorney, was authorized to perform the work in question. The board should refer to their contract with Mr. Nielsen to determine if his general representation of the town encompasses investigations, or whether the mayor could alone authorize such action, considering that your opinion request states that the board was not consulted to authorize Mr. Nielsen to do the work in question. If the board finds that Mr. Nielsen was authorized by his contract with the town to conduct the criminal investigation, then the board is obligated to pay for the services rendered. However, in making a factual determination, if the board finds that Mr. Nielsen was hired by the mayor, to perform personal services for the mayor, and in the performance of said services Mr. Nielsen investigated possible criminal activity related to the town's elections, the town is prohibited from paying for the personal services, even where the investigation may have benefitted the town. Art. 7, § 14 of the 1974 Constitution prohibits the donation of public funds for a private purpose. Clearly, the hiring of Mr. Nielsen by the mayor for an election contest suit was for a private purpose.
 Question No. 2
It has been and remains our opinion that "the legislative power of the board of aldermen encompasses control of the municipal fisc. The mayor cannot supersede the fiscal control of the board of aldermen unilaterally." (Atty.Gen.Op. Nos. 90-612, 90-616; Smith v. Town ofVinton, 209 La. 587, 25 So.2d 237 (La. 1946)). Further, we have opined that the municipal treasurer can only disburse municipal funds on a warrant issued by the order of the mayor and board of aldermen, R.S.33:425, and that a budget does not authorize expenditures. Every expenditure requires an appropriation, and every warrant for withdrawal of funds from the municipal treasury requires a specific ordinance. R.S.33:462. Therefore, it is our opinion that the mayor may not legally obligate the town to make expenditures for professional services without the approval of the board of aldermen.
We also note that the municipality is subject to the Louisiana Local Government Budget Act, R.S. 39:1301 et seq. Said act requires the Town of Grand Isle to prepare a budget from which the governing authority must monitor revenues and control expenditures. The adopted budget and any duly authorized amendments constitute the authority of the mayor and board of aldermen of the town to incur liabilities and authorize expenditures from the respective budgeted funds during the fiscal year. R.S. 39:1310(C). Therefore, legal expenses must be included in the town's budget, if the town plans to incur said expense.
If you have any further questions, please do not hesitate to contact this office.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 _________________________________ ANGIE ROGERS LaPLACE Assistant Attorney General
ARL/pb
OPINION NUMBER 99-232
August 19, 1999
71-1-1 Municipal Fire Police Civil Service
Following work day may not be considered holiday when holiday falls on employee's day off. Employee's birthday is not a statutorily defined legal holiday, but authority may so declare said birthday a legal holiday for police employees.
Honorable Gregory N. Marcantel Mayor P.O. Box 1249 Jennings, LA 70546
Dear Mayor Marcantel:
In response to your first inquiry of recent date, note that the Louisiana Constitution grants to the legislature plenary power over the minimum wage and law standards of firemen and policemen. Thus, R.S. 33:1999[1]
regarding compensation for firefighters' work on holidays is applicable to all home-rule charter municipalities. See LSA-Const. Art. 6, Section 14 (1974); Spillman vs. City of Baton Rouge, 441 So.2d 1243 (La.App. 1st Cir. 1983); writ den., 446 So.2d 1213 (La. 1984); Ruby vs. City ofShreveport, 427 So.2d 1267 (La.App. 2nd. Cir. 1983); writ den.,433 So.2d 154 (La. 1983), copies attached.
In response to your second question, the local governing authority has within its discretion the authority to declare police employees' birthdays to be holidays for purposes of additional compensation granted by R.S. 33:2214.1.[2] See Attorney General Opinion 81-1236, copy attached.
In response to your third question, the following work day may not be considered an employee's holiday when a holiday occurs on an employee's normal day off. See Attorney General Opinion 81-1236, copy attached.
Should you have further questions, please contact our office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
BY: ______________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL KLK:ams
[1] R.S. 33:1999 regarding firefighters is entitled "work on holidays" and provides:
 A. Firefighters in municipalities, parishes, and fire protection districts who are required to work on holidays as provided for in Subsection B of this Section shall receive in addition to the compensation to which such employee would be entitled under laws and pay plans now in effect, compensation at the rate of one times his usual salary, to be determined by reducing his average monthly salary to an hourly scale; provided that in lieu of additional compensation, governing authorities, at their option, may grant fire department employees time off from work for which such additional compensation would be due and payable to said employees.
 B. Firefighters in municipalities, parishes, and fire protection districts shall be entitled to not less than ten holidays per year. Such holidays shall be named by the governing authority of the municipality, parish, or fire protection district pursuant to their established holiday policy.
[2] R.S. 33:2214.1 regarding policemen is entitled to "work on holidays" and provides:
 All municipal police department employees to which this Subpart applies who are required to work on Christmas, New Year's Day, July 4th, and Labor Day, and/or on any other two state legal holidays to be selected and designated by the local governing authority, shall receive, in addition to the compensation to which such employee would be entitled under laws and pay plans in effect, extra compensation at the rate of one times his usual salary, to be determined by reducing his average monthly salary to an hourly scale but which, in no event, shall be less than two times the hourly rate payable to the employee for straight or regular time under laws or pay plans in effect; provided, that in lieu of additional compensation, governing authorities, at their option, may grant police department employees time off from work for which such additional compensation would be due and payable to said employees.
 Nothing in this Section shall preclude a local governing authority from granting to its municipal police department employees covered hereby, additional holidays; provided payment therefore is not less than required by the provisions of this Section.