Dear Mr. Newell:
You have asked for an opinion from this office concerning whether the Town of Haynesville is obligated to pay a transportation bill for the amount of $700.00 and an autopsy fee arising out of the death of a resident of the Town of Haynesville, a Lawrason Act community.
According to your request, a resident of the Town of Haynesville became ill and admitted herself to a hospital in the Town of Homer, both located in Claiborne Parish. Five days after her admittance to the hospital, this resident passed away and was diagnosed with pancreatitis. According to your request, although there was no foul play suspected, the resident physician "on call" at the time of death requested that an autopsy be performed. The decedent was transported from the hospital in Homer to Little Rock, Arkansas, for an autopsy performed by Dr. Frank Peretti. The company used to transport the decedent to Dr. Peretti's office in Little Rock is owned and operated by the Chief of Police for the Town of Haynesville. You have indicated during a telephone conference that the Claiborne Parish Coroner made the decision to transport the decedent to Little Rock. *Page 2 
I. Does the Town of Haynesville Have an Obligation toPay the Autopsy Bill?
Pertinent to the issue raised in your opinion request, La.R.S. 33:1563(A)(8) provides that "[t]he coroner shall either view the body or make an investigation into the cause and manner of death in . . . [a]ny death from natural causes occurring in a hospital under twenty-four hours admission unless seen by a physician in the last thirty-six hours." (West 2009). But a coroner always has the discretion to either perform an autopsy or have an autopsy performed by another competent physician. La.R.S. 33:1563(B)(1) (West 2009). Based upon the facts provided to our office, a coroner was not required by law to investigate the decedent's death in this case as she died of natural causes five days after admitting herself to the hospital. Apparently, the Parish Coroner exercised his discretion in determining that an autopsy was necessary and, in this instance, requested that Dr. Peretti, a forensic pathologist in Little Rock, Arkansas, conduct the autopsy.
The primary focus of La.R.S. 33:1556 is on "fees for coroner's services." Those statutes relevant to the issue raised in your opinion request are as follows:
La.R.S. 33:1556(C)(1) When a death occurs and the death appears to have been due to natural causes, the coroner of the parish of domicile of the deceased shall be responsible for any investigation into the cause and manner of death and for any examination of the body or autopsy.
 * * * *
La.R.S. 33:1556(D)(1) The parish or municipality in which the deceased was domiciled, in the case of a death due to natural causes, or the parish or municipality in which the accident or crime occurred, in the case of a death due to other than natural causes, shall pay the coroner's fees and any necessary fees for the investigation and the cost of any autopsy including the cost of transporting the body. However, if the coroner of the parish in which the death occurred initially viewed the body or investigated the death, the fees for such viewing or investigation shall be paid to him by the parish or municipality in which the death occurred.
 * * * *
La.R.S. 33:1556(E) When a death occurs and the death was due to natural causes, the coroner's fees and expenses, including the cost of transporting the body, shall be paid by the municipality in which the deceased was domiciled or by the parish if the deceased was domiciled in the parish outside of a municipality. When a death *Page 3 
occurs and the death was due to other than natural causes, the coroner's fees and expenses including the cost of transporting the body shall be paid by the municipality in which the crime or accident occurred or by the parish if the crime or accident occurred in the parish outside of a municipality.
(West 2009).
The foregoing statutes offer guidance as to whether Claiborne Parish or the Town of Haynesville should be responsible for paying the coroner for his services. When an individual dies from natural causes, as in this case, the coroner of the parish of the decedent's domicile shall be responsible for investigating the cause and manner of death, and for examining and performing an autopsy on the decedent's body. La.R.S. 33:1556(C)(1) (West 2009). Because the decedent died of natural causes, either the parish or municipality in which the deceased died must pay any coroner's fees, the cost of any autopsy, and any transportation fees. La.R.S. 33:1556(D)(1). There is no indication from the facts provided in your opinion that the decedent was domiciled outside of the Town of Haynesville; therefore, we assume that she was domiciled within the Town of Haynesville. Hence, the Town of Haynesville should be the entity responsible for the coroner's costs, fees, and expenses associated with the autopsy.
While La.R.S. 33:1556 sets forth the law for determining which governmental entity should pay the coroner's fees and expenses, La.R.S. 33:1560 contains the procedures that must be followed when a coroner contracts with another physician for assistance in the performance of an autopsy. La.R.S. 33:1560 states as follows:
The coroner may contract with any competent physician or other expert to assist in the conduct of an investigation or autopsy. The physician or other expert, upon the certificate of the coroner, shall be paid by the parish or municipality such compensation for his services as shall be mutually agreed upon by the coroner and governing authority of the parish or municipality responsible for the expenses of the investigation or autopsy. However, such compensation, including any expenses, tests, costs, or fees, shall not exceed the sum of five hundred dollars, unless otherwise mutually agreed upon by the coroner and the chief executive officer or chief fiscal officer of the parish or municipality.
(West 2009) (emphasis added). *Page 4 
The foregoing statute does not require that a physician, who enters into a contractual relationship with a coroner to assist in the performance of an autopsy, reside or work in Louisiana. However, the statute does specifically require that compensation for any services must be mutually agreed upon by the coroner and the entity (parish or municipality) responsible for the expenses associated with the autopsy. While the coroner is given the authority to enter into contracts with other physicians for assistance in performing autopsies, payment is conditioned upon a mutual agreement between the coroner and the parish/municipality. Furthermore, the maximum allowable fee authorized for compensation is $500.00 unless the coroner and chief executive officer or fiscal officer of the parish/municipality enter into an agreement authorizing a greater fee. In this case, it is not clear whether such a mutual agreement exists between the Claiborne Parish coroner and the Town of Haynesville. If such an agreement exists, then the Town of Haynesville should be responsible for the costs associated with Dr. Peretti's performance of the autopsy. And yet, even if the coroner of Claiborne Parish failed to take these steps, Dr. Peretti may still be able to recover from the Town.
In La. Atty. Gen. Op. No. 93-413, a copy of which is included, our office explained that although there was no contractual relationship between the coroner and the parish/municipality, the parish/municipality could still be responsible for up to the statutory maximum of $500.00 under the theory of quantummeruit. Our office also explained that the party seekingquantum meruit bears the burden of proof to show the value of the services rendered. Relying on our prior opinion, this office would conclude that even without a contract, if Dr. Peretti can satisfy his burden of proof, he may be entitled to recover up to $500.00 from the Town of Haynesville for the services he rendered.
II. Does the Town of Haynesville Have an Obligation toPay the Transportation Fee Associated with the Autopsy?
Ordinarily, transportation costs are to be paid by the parish or the municipality in which the deceased was domiciled when a death occurs due to natural causes.[1]The transportation costs at issue in this case are $700.00. Your request concerns the propriety of Haynesville paying these costs in view of the fact that the transportation company is owned and operated by the Chief of Police of the Town of Haynesville, which operates under the Lawrason Act.
Under the Lawrason Act, the Chief of Police is an "officer" of the municipality. See La.R.S. 33:381 (A) (West 2009). Pursuant to La.R.S. 33:385(C), "[n]o member of the board of aldermen, or anyother officer of the corporation, shall be directly or indirectly interested in any work, business, or contract the *Page 5 
consideration of which is to be paid from the treasury of the municipality . . ." (emphasis added). In other words, La.R.S. 33:385(C) prohibits any "officer" of the municipality from receiving any other payment from the municipal treasury for outside business. This would include the Chief of Police. Furthermore, such payment received by the Chief of Police is presumptive evidence of a violation of the public contract fraud statute. La.R.S. 14:140 (West 2009). (Louisiana Attorney General Opinion Nos. 90-531 and 78-122, copies of which are enclosed herein, also address the presumptive evidence of a violation of La.R.S. 14:140.)
La.R.S. 14:140 provides in pertinent part, as follows:
A. Public contract fraud is committed:
(1) When any public officer . . . shall use his power or position as such officer or employee to secure any expenditure of funds to himself, or to any partnership of which he is a member, or to any corporation of which he is an officer, stockholder, or director; . . .
The fact that an expenditure has been made to any named party in Paragraphs (1) and (2) of this Section, or to any partnership of which he is a member, or to any corporation of which he is an officer, stockholder, or director, shall be presumptive evidence that such person has used his power, position, or influence to secure such an expenditure.
(West 2009) (emphasis added).
It is possible that the Chief of Police of the Town of Haynesville may not have foreseen that his transportation business would ever be reimbursed from his municipality for transportation services rendered in Homer, unless his business operates in Haynesville. Based upon the facts provided, it is not clear whether the Chief of Police used his power or position to secure such expenditure by Haynesville. Therefore, it is not clear whether the statute on fraud would apply in this case. Whether he used his power or position to secure reimbursement is an issue of fact. To make such factual determinations would contravene our Office's long-standing policy that there will be no opinions rendered on issues of fact.[2]
However, if the Town of Haynesville makes any payment for the transportation fees assessed by the transportation company to the Chief of Police, then there may exist a presumption that the Chief, as the owner and operator of said *Page 6 
transportation company, committed public contract fraud. Therefore, it is our office's opinion that the Town of Haynesville should refrain from paying the transportation fee to the Chief of Police.
Finally, depending on the specific facts of this case, it may also be a violation of the state ethics law for the Chief of Police to receive payment from the municipality for transportation services. This office does not address the application of the Louisiana Code of Governmental Ethics, La.R.S. 42:1111, et seq., as the Louisiana State Board of Ethics renders advisory opinions resolving ethical concerns. See La.R.S. 42:1134(E). You may direct your inquiry for an opinion to the Louisiana State Board of Ethics, P.O. Box 4368, Baton Rouge, Louisiana 70821, telephone: 225-219-5600.
We hope that this information sufficiently answers your inquires. If we can be of further assistance, please do not hesitate to contact us.
Very truly yours,
JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL
By: __________________________
KATHERINE K. GREEN
Assistant Attorney General
JDC:KG:jv
[1] La. R.S 33:1556(D)(1) and La.R.S. 33:1556(E).
[2] La. Op. Att'y. Gen. 445 (1918-19).
 ATTACHMENT
OPINION NUMBER 78-0122
Honorable Zelma Wyche. Attorney General of Louisiana — Opinion March 14, 1978.
R.S. 14:140
La.R.S. 14:140 provides that when an expenditure of public funds is made to any public officer or public employee, such expenditure is presumptive evidence that such conduct is improper.
Honorable Zelma Wyche Chief of Police Tallulah, Louisiana
WILLIAM J. GUSTE, JR., Attorney General.
Dear Mr. Wyche:
This letter is in response to your request for an opinion from this office as to the propriety of a police officer, who operates a repair shop, repairing police vehicles owned by the city.
La.R.S. 14:140 provides that when an expenditure of public funds is made to any public officer or public employee, such expenditure is presumptive evidence that such conduct is improper.
We feel that this should sufficiently answer your question.
Sincerely,
WILLIAM J. GUSTE, JR.
ATTORNEY GENERAL
By
CARL ROBERTS
ASSISTANT ATTORNEY GENERAL
CR:eb
 ATTACHMENT
OPINION NUMBER NUMBER 90-0531
William E. Weatherford. Attorney General of Louisiana — Opinion April 18, 2010.
71 — MUNICIPALITIESLSA-R.S. 14:140; LSA-R.S. 33:385
State law prohibits officers of Lawrason Act municipalities from entering contractual relationships with employing municipality.
William E. Weatherford Hines, Jackson Hines Certified Public Accountants P. 0. Box 2188 Natchitoches, LA 71457
WILLIAM J. GUSTE, JR., Attorney General
Dear Mr. Weatherford:
Your firm is currently conducting an audit of the City of Winnfield, and have propounded several questions of law for an opinion by the Attorney General in connection with this audit. We answer these questions separately.
1. Can an alderman who owns the only concrete plant in Winn Parish sell concrete to the City of Winnfield and contractors for the city? The only alternative source of concrete is 40 miles away and the cost of transporting it is prohibitive.
Answer: LSA-R.S. 33:385 generally prohibits any alderman or other officer of the municipality from being "directly or indirectly interested in any work, business or contract, the consideration of which is to be paid from the treasury of the municipality . . ."
This facially would prohibit the business relation you describe. R.S. 33:385 does provide an exception to the prohibition for the town of Erath. There is no sole-source exception generally for all municipalities that is either express or implied. The import of the mandatory wording of the statute is that this alderman may sell concrete to the City of Winnfield and its contractors, or he may serve on the board of aldermen, but he cannot do both at the same time.
In a telephone conversation with the alderman in question, he reported that he had furnished concrete in small amounts to the City of winnfield as a convenience to the City. The amounts involved were usually no more than a yard at a time. Upon being informed that even such minor business transactions with the City violated state law, he stated that he would immediately terminate all sales of Concrete to the City in order that he might continue to serve as an alderman. This decision would eliminate the violation of R.S. 33:385 prospectively.
2. The City of Winnfield leases from the Chief of Police, the public works director, and several police officers their private automobiles which they then utilize as their official automobile for their job functions. Does this violate R.S. 33:561 or R.S. 33:713?
Answer: The answer is negative. R.S. 33:561 does not apply to Lawrason Act municipalities enabled by R.S. 33:321-463, but is rather a provision of the Commission Plan of Government for municipalities established by R.S. 33:501-571. R.S. 33:713 is a provision of the Commission-City Manager Plan for municipalities established by RA.S. 33:611-851.
However, the contracts of lease between the chief of police, the public works director, police officers, and the City of Winnfield are prohibited by R.S. 33:385, in that these persons are "officers" of the municipal corporation. R.S. 33:386A. These facts further present a prima facie violation of LSA-R.S. 14:140.
These lease contracts are legally null and void ab initio, in that both the City and the officers in question lacked legal capacity to perfect such contracts of lease.
The allegations that the City of Lake Charles may or may not utilize similar leases is immaterial, for two reasons. First, the City of Lake Charles operates under a home rule charter plan of government, and is not subject to R.S. 33:385 of the Lawrason Act. Secondly, this type of contract is illegal per se, andcontra legem customs do not supercede positive law in Louisiana.
3. The mayor is budgeted an expense account of $6,000 a year, and receives $500 a month without further council action. Is this an increase in the mayor's salary without council authorization?
Answer: It is not only salaries which require approval of the board of aldermen. All expenditures do.
The legislative power of the board of aldermen encompasses control of the municipal fisc. The mayor cannot unilaterally supercede the fiscal control of the municipal governing authority. Smith v.Town of Vinton, 209 La. 587, 25 So.2d 237 (1946); Opinions of the Attorney General No. 90-612, No. 90-616.
The City treasurer can only disburse municipal funds on a warrant "issued by the order of the mayor and board of aldermen." LSA-R.S. 33:425. (Emphasis added)
A budget plans expenditures but does not authorize expenditures. Every expenditure requires an appropriation, and every warrant for withdrawal of funds from the municipal treasury requires a specific ordinance. R.S. 33:462.
If the monthly payments of $500 were made without an appropriation ordinance, they were unauthorized expenditures of public funds. R.S. 33:462.
4. The chief of police of the City of Winnfield owns and operates a telephone "beeper" service. The City of Winnfield purchases this service for the use of the personnel operating the municipal ambulance service. Does this violate any statute?
Answer: The chief of police, a municipal officer, contracts with the municipality and receives funds from the treasury of the municipality. This is a starkly clear violation of R.S. 33:385. Such contract is null and void ab initio, as neither the chief of police nor the City of Winnfield possessed legal capacity to enter into a legally prohibited contractual relationship.
5. The City of Winnfield has contributed public funds to the Winnfield Film Commission, a private entity associated with the Winnfield Chamber of Commerce. Is this a lawful expenditure?
6. The City of Winnfield donated a used dump truck to the Village of Atlanta. Is this lawful?
Answer: Negative. It is an unconstitutional donation of public property. See answer to question 5 above.
Because the subject matter of this opinion also presents possible violations of the Code of Governmental Ethics, the pinion request and this opinion are being forwarded to the Board of Ethics for Elected Officials for its review and such action as it finds appropriate.
Trusting this to be of sufficient information, I am,
Sincerely,
WILLIAM J. GUSTE, JR.
ATTORNEY GENERAL
By: __________________________
CHARLES J. YEAGER
Assistant Attorney General
CJY:jv
 ATTACHMENT
OPINION NUMBER NUMBER 93-0413
Bobby L. Culpepper, Esq. Attorney General of Louisiana — Opinion April 18, 2010.
13 — CORNERLSA-R.S. 33:1560
If there was no mutual agreement for the performance of an autopsy between the cororner and the governing authority by an expert, and no mutual agreement with the chief executive officer for a fee over $500.00. the Village cannot be required to pay the pathologist's bill for $840.00
Bobby L. Culpepper, Esq. Attorney-at-Law
525 East Court Avenue Jonesboro, LA 71251-3497
RICHARD P. IEYOUB, Attorney General
Dear Mr. Culpepper:
This office is in receipt of your request on behalf of the Village of East Hodge for an opinion of the Attorney General in regard to coroner's fees for an autopsy. You indicate the coroner obtained an autopsy from Forensic Pathologists, Inc. for which the Village of East Hodge has been billed $840.00. You ask if the coroner's fees and expenses under R.S. 33:1556(E) cover an autopsy.
You inquiry in regard to the expense of an autopsy makes reference to R.S 33:1556(E) which provides in part that when a death occurs and was due to other than natural causes, "the coroner's fees and expenses, including the cost of transporting the body, shall be paid by the municipality in which the crime or accident occurred or by the parish if the crime or accident occurred in the parish outside of a municipality."
It would appear that an autopsy would fall within this provision, but under the facts presented in your inquiry it must be read in pari materia with R.S. 33:1560. which provides as follows:
The coroner may contract with any competent physician or other expert to assist in the conduct of an investigation or autopsy. The physician or other expert, upon the certificate of the coroner, shall be paid by the parish or municipality such compensation for his services as shall be mutually agreed upon by the coroner and governing authority of the parish or municipality responsible for the expenses of the investigation or autopsy. However, such compensation, including any expenses, tests costs, or fees, shall not exceed the sum of five hundred dollars, unless otherwise mutually agreed upon by the coroner and the chief executive officer or chief fiscal officer of the parish or municipality.
A recent opinion by this office, Atty. Gen. Op. No. 93-347, responded to a similar inquiry. Based upon R.S. 33:1560, it was found a coroner can only utilize the services of a pathologist if he has the approval of the governing authority of the parish or municipality on whose behalf the autopsy is being conducted, and the charge cannot be in excess of $500 per autopsy unless there is a agreement with the chief executive officer or chief financial officer.
There is an inference in your request that the coroner did not obtain an agreement for the performance of the autopsy in question by Forensic Pathologists, Inc., and if there was not a mutual agreement with the governing authority for the performance of the autopsy and agreement for a fee over $500 with the chief executive officer, the Village cannot be required to pay the charge of $840.00.
Assuming there was no agreement in accordance with R.S. 33:1560, we believe the Village would be responsible on a quantum meruit basis with a maximum of $500. Laga v. Village ofLoreauville, 571 So. 2d 212 (La.App 1990) holds the burden of proof is on the party seeking quantum meruit to show the value of the services rendered. Since this decision, the amendment of R.S. 33:1560 sets a limit of $500 for the experts service when the coroner has the agreement of the governing authority. We would have to conclude the limit would be $500, even if service worth $840 .can be shown,.
We hope this sufficiently answers your question, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours, RICHARD P. IEYOUB Attorney General By: __________________________ BARBARA B. RUTLEDGE Assistant Attorney General BBR/0674f